Ruffin, Judge,
 

 after stating the case as above, pro» ccedcd : A mortgage and a conditional sale are nearly allied to each other, and it is frequently difficult to say, whether a particular transaction is the one or the other,, The difference between them is, that the former is a security for a debt $ and the latter is a purchase for a pries paid, or to be paid, to become absolute on a particular event $ or a purchase, accompanied by an agreement ta re-sell upon particular terms. It is tine latter Mud, that
 
 *376
 
 runs so nearly into a mortgage. For, as needy aim»1 " tressed men are those who are commonly drawn »:n - such contracts, and the very anxiety to get their estates aSa*nJ which produces a stipulation to that effect, denotes either that it was favorite property, which the party did mot intend to part from conclusively, or that the price was so inadequate, as to make it material, in point of inte» rest, that they should have the power to reclaim, Courts lean towards considering them mortgages. But there is no rule of law, that a sale shall not be made conditionally. In each case, the only difficulty is, to ascertain ihe character of the transaction. When it is once determined to be a mortgage, all the consequences of account, re» demption, and the like, follow, notwithstanding any stipulation to the contrary. For the power of redemption is not lost by any hard conditions | nor shall it be fettered to any point of time, not accor ding to the course of the Court. This is well expressed in the familiar maxim, “ once a mortgage, always a mortgage.” In the present case, the clause Inserted in the deed may well consist with a contract of either description. It is Equivocal in itself. But it is sufficient to induce the Court to decree a redemption, if nothing else appeared, because the Court inclines to that side, to prevent oppression and hard dealing. It is however susceptible of variation by the acts of the parties, and the circumstan» <ces artending the transaction, which show it to be the one or the other. I do not mean, that it can be contradicted by the testimony of witnesses, to show either that the bargain was different from that expressed, or that it was meant to be, unless there be fraud. But I mean, that the parties’ acts and their dealings are material to show the intent.
 
 Streator
 
 v.
 
 Jones
 
 (3
 
 Hawks
 
 423) for instance, is a case where an absolute deed was held a security, upon evidence of lending and borrowing between a needy man on one side, and an habitual and hard lender »n the other
 
 %
 
 of great inadequacy of price, ?f It?
 
 *377
 
 ■s*smr pvb’e
 
 i
 
 and of flic possession of the I^sid by the .■!"'■ ■■■'nor, after he made the deed.
 
 Ar- Sir James Mans-sys
 
 (I
 
 ggulden
 
 v.
 
 May,
 
 2
 
 New
 
 Rep. 449) the con-«.b -' <'f >b ■ parties ean never be looked to,, to íis a eons*> uc-i'J law upon tlieir deeds, *b bad been, doit'» in
 
 CooLt
 
 "
 
 fík (Cowp.
 
 819) But in Equity. iLcdr conduct is ií*'1’1, ■' regarded as evidence of the i¿¡'r, v ct making u -, utrstri. Nov/ what are the usual badges of a j gag.-1 ’ They are, that there is a ¡previous debí, or a present advance of money apon
 
 lo.rn?
 
 for «kick some evidence is taken, obliging tbs borrower person ally to she abr-olute payment. There is a bond for ihe.deblj or a covenant in the mortgage deed for-the payment. This is usual, where the security by mortgage is taken on landed property. Much more shoo'd we expect to find it. where the security is on a slave, who may die the next day. It is always a question, in mortgage or no mortgage — whose loss will it be, if the thing is destroyed. If that of the maker of the deed, then it is a mortgage. Again, one of the most difficult situations, that can be, is that of
 
 u
 
 mortgagee in possession. He is subjected to an account, generally the most rigorous and under great disadvantages ; for lie is liable not only for profits made, but that might be made$ and profits are always greater to slanders by, who have a high opinion of their own management, than they are in reality to those who work. Hence a mortgagee never takes possession, until he is obliged. Nor is a mortgagor mora willing to go out of possession, and give up the management and present use of hi- property, The- one doer, not surrender, nor the other take possession, but an the last alternative. And we may almost ventare to assert, that no mortgagee or mortgagor ever yet wado a contract* upon which the possession was to change immediately, unless it were the veriest grinding bargain, tSi?t could be driven with a distressed man, who had no way to «un?. ‘When to this is superadded, that a fair and full price.-
 
 *378
 
 §400 was paid, it seems impossible to believe- tliat could be, on loan. That this price was paid, is proved by the Plaintiff’s own brother, who was prese at the treaty, and wrote the deed. I do not refer to his deposition, for tSie sake of what he says was the understanding of the parties ; though in that respect he supports the answer ; but to
 
 get at
 
 the acts of the partic s. Ho proves, that they came to a settlement, not to ascertain the debt due to the Defendant, that it ¡night he secured ; but to ascertain its amount, that it might be known how much would remain to be paid in money. Upon that settlement, ail the, old bonds were given up, and no new one taken. Part of the debt was for the price of land. Would the Defendant have relinquished his equitable lien on that, for the precarious security of a mortgage on a slave, for that and other advances to the full value ? The Defendant likewise took immediate possession.
 

 Here then it appeal's, that instead of
 
 u, security
 
 for a debt, the slave was partly a
 
 satisfaction
 
 of a pr< -existing one; and the balance was then paid, if the Plaintiff had been borrowing, and pledging hi;: negro as a security, would he have received so large, apart ofiheloan in an
 
 order ?
 
 Such a payment might be expected to be received. But such a loan is out of the way of business. The subscribing witness is supported by several oil ers, in his statement of the value of the negro and of the Defendant’s possession. The sum advanced was thefullvalue. These circumstances satisfy me, that a redemption was never intended. And the sale by
 
 McCannon
 
 to
 
 Hauser
 
 at the same price removes every appearance of it. He might have taken the negro in payment and advanced the difference; because he could then sell himself again after a reasonable time. But the idea is preposterous, that a man, who was himself obliged to raise money, would surrender a good security on land, for the
 
 *379
 
 ■ ■ fín cf goUhtg a Mortgage «•; a ¡icf-'ro, v.bicb, gg v-i. ia«jt>d property, ho coaid not ce!!. Without citing "íls.r (',«!v.‘h, 2 wi¡! oalv iM'ftí»* t« the genera! priste!- , ■>0íTt>''.! froiti Sm*!»
 
 by Mr.
 
 Butler, hi bis noto fo ' ,
 
 r.L ííüD a.
 
 Thfi cii’cuisfii«:¡'’oa
 
 hr-ra
 
 repel every !
 
 ...
 
 oía tuorigtigr, oroía security mií*e;tiLi¡>?» r»l an »n«
 
 4- ik'thyL
 
 The old «v.Hriüec were «p, and no eü-'4 o-ie tstS.'pn;
 
 Hit'
 
 price paúl a a" a MI oí;»; tñ¡; '¿hí:,.',ííR! rr himself '.vea iit'cesqhotis, ami ob” ;•"('«! ío parí; «Vo*u prowEáy
 
 :ú
 
 ¡p..yJ>i-¡ ©ws df*!»íM 5 ¡k>
 
 U',c¡k
 
 ininimlbvti [ji'VJí’Pi'ííoj?
 
 iv:/í
 
 pxíiusiy- «mb? sale «í íf.s stegro Ü¡e dr.y afhc- üsííT limited íbr &? PLihsüsPs rr-pwrírñr; ;i;kI ¡jaapa rr:di <Me na’/
 
 rpí
 
 his owts money back
 
 :
 
 am! ibis wap fv>< Uí yfj(¿’;> before this suit was brcvgiii. if tpig i;d 5»**. ’‘o’iic.jdered a parchase, then t.ii.-ro ran Ire none, niik'CS ii be aiisoisitc afc the Kinking of is aii.i forever, — .
 

 Tim ITuwnil Imc
 
 m
 
 aissj cm! IT; -JIÍ maet be dismiss c,c v.í.Ie eo-M,
 

 ■Tm. C >:;??? tv.:.
 

 —Let Me kill k», ílLcak-M vs';!; f’ft.Tv,