Daniel, Judge.
 

 The plaintiff filed this bill on the 29th of November, 1833, to enjoin the defendant from proceeding in an action of ejectment against him, and also to redeem what he alleges to be a mortgage of the land to the defendant. The plaintiff alleges that he, being distressed for mo
 
 *188
 
 ney to pay his debts, agreed to mortgage to the defendant the land, 220 acres, worth §3,000, for the sum of §1,300; that, being.an illiterate man, it was agreed between them that the defendant should have the mortgage deed prepared; that, instead of a mortgage deed, he had prepared an absolute deed of bargain and sale with a covenant of warranty. The plaintiff proceeds to state, that he being much distressed with his debts, and having no other person to aid him but the defendant, and then having great confidence in his word, did, on the 25th of September, 1829, execute the said deed, under a parol agreement, made at the time, that he might redeem the land in two years; that on the 25th of November, 1833, he tendered to the defendant all the money due to him on the said mortgage, but he refused to accept it, or to reconvey the land, and brought a suit at law to oust the plaintiff of his possession.
 

 The defendant, in his answer, says that the plaintiff offered to mortgage the land to him for a loan of money; but he expressly and distinctly refused to make any such agreement, but told the plaintiff that he would purchase the land absolutely; Whereupon, an agreement for the absolute sale was entered into between them, and they both went to a mutual friend to have the deed prepared, which was accordingly done, and the deed was distinctly read over to the plaintiff, and he executed the same, well understanding its purport. The defendant admits that he did agree with the plaintiff to re-sell the land to him, in two years, for the same sum of money, with interest; or to convey it to his appointee, if such appointee would give a larger sum. But he denies that the deed by him taken, was ever intended to be a mortgage to secure any debt or demand, which the defendant had on the plaintiff. The defendant says that the price by him paid for the land (§1,300] was a full and fair price for the same; that he afterwards leased the said land to the plaintiff for two successive years, expecting that he might avail himself of the agreement for a re-sale; that the plaintiff, failing to comply with the agreement to re-purchase within the time limited, he, at the expiration of the two years, occupied and cultivated himself all the land, except the
 
 *189
 
 dwelling house and some lots of land near it, which he, out of humanity, let the plaintiff occupy, as he had then no other place to move to. Since he took possession oí the land, he, the defendant, has made large improvements in clearing, ditching and fencing. The defendant denies that the plaintiff is illiterate; he denies any circumvention or undue advantage taken of the plaintiff to obtain the said absolute deed of bargain and sale. To this answer a replication was put in by the plaintiff.
 

 There has been a great deal of testimony taken in this cause; many witnesses have been examined, and, among the rest, Emanuel Jarman, who wrote the deed. He says that King and Kincey came to his house, and both parties requested him to write a warranty deed for the land, which he did. King said he had sold his land to Kincey. Kincey said, at the time of receiving the deed, that if King would refund the sum given for the land, within two years from that time, he would return the land in a quit claim deed. — . Witness understood this to be a part of the contract. P. H. Jarman, the subscribing witness, states that King then, and at that time, said he had sold the land to Kincey; asked his father to write the deed; it was done; they executed it, and he witnessed it. Kincey then stated that he had bought the land to save himself, and, when King paid him his money and interest, he would give the land up to him again. Several of the witnesses depose that King told them that he had. sold the land to Kincey, but that he had two years to get it back, by paying the same money, or selling it to any other person at a higher price than Kincey had given for it. There is proof that King knew how to write, and read writing___ He knew what he was doing when he executed the deed.— There is no proof that Kincey circumvented him, or imposed on the weakness of his understanding, to get him to execute an absolute deed, when he intended a mortgage. As to the value of the land there has been a number of witnesses examined. Of those on the part of the plaintiff, some say it was worth §1,300 — one says it was worth §2,000, Of those on the part of the defendant, three say it was worth only $1,000 — several say (and they are good farmers, and
 
 *190
 
 men of standing in the neighborhood) that the price given (SI,300)
 
 was
 
 a full and fair price for the fee simple in the said land. Upon the whole case therefore, we are of the opinion that a mortgage was not intended by the parties, at the time of the execution of the deed; but that the- defend-, ant agreed by parol to re-sell to the plaintiff or to his appointee, in two years from the date of the deed, for the same sum to the plaintiff, or to his appointee, if he would give a larger sum. 'From all the testimony, we think $1,300 was a fair and full price for the land at the date of the deed. There is nothing in the evidence to show that the parties contemplated a mortgage. There is nothing to shew that the plaintiff was taken in or oppressed by the defendant. The plaintiff did not make application to re-purchase the land in the time agreed upon, and he now has no right to complain. The bill must be dismissed with costs.-
 

 Per Curiam. Decree accordingly.