*222
 
 Gaston, Judge.
 

 This bill was filed by Norman McDon- and John McDonald against Daniel McLeod, in the Court of Equity for the county of Moore, on the 7th of Februarf> 1^37; and its object is to let in the plaintiffs to redeem a negro slave named Joe, which the bill alleges to have been conveyed by them to the defendant, as a security for the repayment of a sum of money lent to them by him. The plaintiffs state, in their bill, that in the month of February, 1829, having occasion for the sum of seven hundred dollars, to pay judgments obtained against them
 
 by one
 
 David Kennedy, they made application to the defendant for a loan of money, and the defendant thereupon advanced and lent to them the sum of four hundred dollars; and for the purpose of securing the repayment thereof, they delivered to him the negro slave Joe, then of the age of twenty-two years, and of the value of six hundred dollars, and at the same time executed and delivered to the defendant a bill of sale for the said negro. The plaintiffs charge, that it was not intended either by them or the defendant, by the execution of the said bill of sale, absolutely to sell the said slave; but, on the contrary, it was, at the time of the transaction, expressly declared and agreed by and between the parties thereto, that the plaintiffs should, notwithstanding the said bill of sale, be at liberty to redeem the said slave at any time they thought proper, on repaying- the said four hundred dollars. The plaintiffs complain that they have repeatedly applied to the defendant to come to a settlement with them, in regard to this transaction, and have repeatedly offered to pay whateversum might be found due to him thereupon, and required the redelivery of the said slave; and, particularly, that in the month, of November, 1836, the plaintiff Norman tendered to the defendant the whole sum of four hundred dollars, aud demanded restitution of the slave; but the defendant unconscientiously refused to comply with any of these requisitions; and they therefore pray that an account may be taken of what is due to the defendant for principal money in respect of said loan, and of what may be due to the plaintiffs because of the hire or value of the services of the said negro, while held by the defendant, and that the defendant may be
 
 *223
 
 decreed to re-deliver and re-convey to them the negro so deposited with him, and for further relief. '
 

 The defendant’s answer was filed in August, 1837, and sets forth, that some time in the year 1829, the plaintiffs did apply to the defendant to borrow money, and offered to give a mortgage upon the negro man Joe, as security for its repayment, but the defendant refused to lend on mortgage of the negro ; that the defendant proposed to purchase the said negro if the plaintiffs would take a fair price threfor; that the plaintiffs assented to this proposition, and the sum of four hundred dollars was agreed upon as the full price of the negro ; that the defendant paid this sum to the plaintiffs, and they thereupon executed an absolute bill of sale of the negro to the defendant. He avers that he paid the full market price of negroes of that description, and that the sum paid was understood and expressed to be in absolute.paymentfor the negro, but states that after the money was paid and the bill of sale executed, Norman McDonald, one of the plaintiffs, asked of the defendant whether, if the said Norman should, within a reasonable time, pay the defendant four hundred dollars, he, the defendant, would not let him have the negro, and that, in answer to this enquiry, the defendant declared that he would not come under any obligation to do so, but would act thereupon as he should think proper. The defendant further states, that he has resided constantly within eight miles of the plaintiffs; that from the time of his purchase of the slave, in 1829, until near the close of the year 1836, the plaintiffs never demanded nor set up any claim to the slave; and that then, when negroes were selling at very high prices, the plaintiff, Norman, tendered the money, and made the demand set forth in the bill. To this answer there was a general replication. At the succeding term, March, 1838, the cause was continued, and at September Term, 1838, set down for hearing. At the same time, however, there appears to have been an order whereby it was “ referred to the Clerk and Master to take an account as to the hire of negro, and report to next Court. ” To the succeeding Term, (March, 1839,) a report was returned, wherein the Master states that he had notified the parties to attend, and
 
 *224
 
 that one of the plaintiffs did attend accordingly; that he ^nc^s the plaintiffs received of the defendant $400 on the 15th
 
 of February,
 
 1829; and that calculating interest on this sum’ an<^ aPPlytng. the price of the annual hire of the negro, which he finds to be ¡$67 50 cents, first to the entinguishment of the interest on this sum, and afterwards to the discharge of the principal,- he finds that, on the 15th February, 1839, there was a balance in favor of the plaintiffs of $171 60 cents. The transcript of the record informs us that the report was filed and confirmed, and the cause set down for hearing. At the succeeding Terms of March, 1839, September, 1839,- and March,- 1840, the cause was continued fora hearing, and at theSeptember Term, 1840, was ordered to be removed for a hearing to this Court.
 

 Upon the opening of the case here, it was insisted by the Counsel for the Plaintiffs, that the reference ordered below, was a peremptory adjudication by the Court, that the Defendant was liable to an account as mortgagee for the hire of the negro ; and that the report of the master under that order of reference having been confirmed, it was thereby conclusively established, that not only the entire sum advanced by the mortgagee and the interest thereon had been refunded, but that the Defendant was indebted to the Plaintiffs by reason of
 
 the
 
 excess of hires as
 
 found by the master, and
 
 that nothing remained but to fashion the decree of this Court so as to effectuate the interlocutory decrees aforesaid of the Court below. Although a doubt Could scarcely be entertained, but that the reference, report, and proceedings thereon were intended or supposed by the parties, according to the loose practice formerly very prevalent in the Courts below, not to decide the great question of mortgage or no mortgage on which the controversy depended, but simply to speed the cause and put it in a state for an immediate final decree in case the Court, upon a hearing, should declare the Plaintiffs entitled to relief as mortgagors; the established rules of practice of Courts of Equity would have probably compelled us to acquiesce' in the soundness of the position taken by the Counsel for the Plaintiffs. See
 
 Bruce
 
 v.
 
 Child,
 
 4 Hawks, 377. McLin v. McNamara, 1 Dev. & Bat. Eq. Ca. 409. We
 
 *225
 
 have been relieved however, from all difficulties on this subject, by a petition for a rehearing of the interlocutory decrees below, which we very readily granted, and we now proceed upon the pleadings and proofs to examine the claim of the plaintiffs to relief.
 

 The proofs offered, as bearing on the question whether the negro was sold or pledged, are few.
 

 In behalf of the plaintiffs it is testified by their brother, Swain McDonald, who it would seem (though he does not distinctly so declare) was present when the transaction was consummated, that “Norman McDonald wished a condition for redemption to be inserted in the Bill of Sale, but defendant absolutely refused, saying that such a condition would make it a mortgage, and that he must have a firm bill of sale, but that whenever said McDonald would pay him back the money, he would let McDonald have the negro.” He after-wards repeats with a slight modification, that “the McDonalds still wish to have a condition to redeem in the bill of sale, but defendant refused and said he would have nothing to do with a mortgage, but that whenever they paid the money they should have the negro back.” Sarah Carter testifies that she was present at Norman McDonalds’s some eight or nine years past, when said Norman and his brothers, John and Swain and the defendant, were round a table counting money, that after the money was counted, the defendant, “ addressing himself to Norman McDonald said, ‘this is your money,’ upon which McDonald answered, ‘the negro is yours until I return you the money,’ and the defendant replied “ to be sure or certain,” she cannot recollect which.— The Plaintiffs offer, also, the depositions of Daniel McKethan and Archibald McCollum in relation to the value of Joe at the time of the alleged mortgage. The former states that the negro was as likely as any of his age in the neighborhood, and that the witness would have given $500 for him, but he does not know that he would have sold for that sum, where not personally known, and the latter' supposes he ought to have sold for $500. The defendant has taken no testimony.
 

 We are unable to discover any satisfactory ground, upon
 
 *226
 
 which the plaintiffs entitle themselves to the relief of this Court.
 

 direetiyWer responsive t0 the bl|i is evidence fecdant.de"
 

 It is not questioned but that a deed, absolute upon its face, may be shewn by extrinsic facts to have been executed as a security for the payment of money, and to have put on the form of an absolute deed by reason of the ignorance of the draftsman, or from mistake of the parties, or because of undue advantage taken of the necessities of the debtor. In examining transactions between borrowers and lenders, and between necessitous men and their creditors, Courts of Equity, aware of the unequal relation of the parties, and of the facility by which the former may be surprised into improvident arrangements, and Of the moral coercion which the latter can exercise oter'their apparent freedom of action, are particularly attentive to any circumstances tending to shew an inconsistency between the form of an act and the intent of the parties, and will take great pains, when their suspicion is thus excited, to get at the substance of What was done or intended to be done by them. But unquestionably it is a conclusion of reason, and therefore must be the presumption of every Court, that solemn instruments, between parties able to contract, declare the truth in regard to the subject matter of their Contract, until error, mistake, or imposition be shewn.
 

 The defendant admits that the application of the plaintiffs was for a loan of money to be secured by a mortgage of the slave; and although he declares that this application was rejected, nevertheless the application itself indicates a state of things between 'the parties, a negotiation for a loan, which calls for the scrutiny Of the Court into the transaction which followed upon it. If the sale — or apparent sale — which then took place, had been for a price grossly disproportionate to the value of the sláve, this would have been a material circumstance to shew, either that the absolute deed was intended to operate only as a security for' repayment of the money then advanced, or waS obtained by a fraudulent misrepresentation that it should be used only as such a security. But the evideuce does not establish a gross disproportion. The answer, , „ ° , r .r , . , ’ which is evidence for the defendant in this respect, because directly responsive to the bill, positively states not only that
 
 *227
 
 the sum paid was agreed upon by the parties as the full price, but that it was in fact the full market price of the slave. Nor is
 
 this
 
 statement disproved. The value of a
 
 slave
 
 is necessarily a matter more or less of opinion-^ and is not susceptible of very precise ascertainment. The only witnesses examined as to this point are those introduced by the plaintiffs, and were selected, as we may well presume, because their opinions were known to be favourable to a high valuation. Neither of these states what at the time of the transaction was the general price of slaves like the one in question. One of them declares indeed that he himself would have given $500 for .Toe, but adds that he does not know that such a price would have been given by any person to whom the slave was not personally known; and the other expresses his opinion that Joe ought to have commanded $500. Now if we should allow
 
 this
 
 to be the value of the negro, it is exceedingly improbable that any person would have advanced $400 as a loan, and looked
 
 only
 
 to the negro as security for its repayment. The plaintiffs do not represent themselves as entering into any
 
 engagement
 
 to refund the money — and pretend that they were at liberty to repay it at
 
 any time,-
 
 If the 5lave died, the defendant was to have no means of compelling repayment — and if he lived, the plaintiffs might redeem when they pleased.
 

 If such a contract were indeed made, the defendant might set upa plausible claim to be relieved from it, because of imposition. Nor can we disregard the circumstance that the conduct of the parties can scarcely be reconciled to the view of the transaction, which is pressed on us by the plaintiffs. The defendant, for seven years, under an absolute deed, exercises the rights of an absolute owner, and the plaintiffs, during this time, are not heard to intimate any claim to the property. Nor is the conclusion, to which an examination of the extrinsic circumstances, accompanying the sale or apparent sale, evidently leads us, much, if at all, weakened by the direct evidence on which the plaintiffs rely. The principal evidence is that of Swain McDonald, their brother, and this is very deficient in precision and fulness. It does not state the
 
 details
 
 of the transaction — nor at what period offit
 
 *228
 
 the conversation passed to which he testifies — whether the c*es*re’ exPressed by his brother Norman, to have a condition of redemption in the bill of sale, was before the deed was prepared, or was stated by way of objection to its execution, or wag ma(je imowa after its execution — and whether the declaration of the defendant, that Norman or the plaintiffs might have the negro again on paying the money back, was before the
 
 bargain was
 
 concluded, or afterwards. One fact, however, is explicitly stated by him, that the defendant declared that he would not assent to such a condition being added to the deed, for that it would convert the deed into a mortgage, and he was determined to have nothing to do with a mortgage. .After such a-declaration, it will not readily be inferred that in
 
 effect
 
 the agreement was for a mortgage___ Indeed this testimony — as well as that of the witness Sarah Carter, is consistent with the account given of the transaction by the defendant, except that the witnesses make his reply to the proposal of an agreement for a re-purchase, more unequivocal than it is represented in the answer of the defendant.
 

 Whether such an agreement was in truth made, and if made, within what time the condition of re-purchase was to be acted on, are enquiries into which we need not enter, for this bill is founded solely upon a ground which the plaintiffs have failed to establish, that
 
 the negro
 
 was mortgaged as a security for money borrowed.
 

 Per Curiam. The bill dismissed with costs.