HENRIETTA WATKINS and M. B. JOHNSON and wife, ELVIRA C. JOHNSON, v. BRANTLEY WILLIAMS.

(Decided November 9, 1898).

### *Deeds Absolute and Mortgages.*

1. Whenever a transaction is substantially a security for debt, it becomes a mortgage in a Court of Equity, and the debtor has a right to redeem.

2. Where, upon the face of a transaction, it is doubtful whether the parties intended to make a mortgage or a conditional sale, Courts of Equity incline to consider it a mortgage, because by means of conditional sales, oppression is frequently exercised over the needy.

CIVIL ACTION to recover land tried before *Robinson,* *J.,* at February Term, 1898, of CHATHAM Superior Court.

The plaintiffs complained that the absolute deed under which the defendant held the land from their deceased father, Daniel S. Watkins. with the attendant circumstances, was in fact a mortgage and that it was satisfied.

His Honor held it to be a mortgage and the jury found there was nothing due on it. Judgment for plaintiff. Appeal by defendant.

Statement of facts are contained in the opinion.

*Messrs. Murchison & Calvert,* for defendant (appellant).

*Mr. H. A. London,* for plaintiffs.

FAIRCLOTH, C. J.: The plaintiffs are the only heirs at law of D. S. Watkins, who died intestate in October, 1882. It appears from the record that' said Watkins, in June, 1882, had executed a mortgage on the lands in controversy, about 207 acres, to Hadley & Dixon to secure a debt of $50 due them and payable December 1, 1882, and that he applied to the defendant, his brother-in-law, to take up said mortgage.

Carson Johnson testified that he was a Justice of the Peace in 1882, and was asked by defendant to go with him to Watkins' house to prepare a deed, and further testified that "when they got together they discussed a mortgage of $50 made by Watkins to Hadley & Dixon. Watkins wanted Williams (the defendant) to take up this mortgage and hold it after being assigned to him. Williams objected to having the mortgage transferred to him and suggested a deed to him from

Watkins. That was agreed upon with the understanding that Watkins should have time to redeem his land. Williams suggested two years, but four years was agreed upon as the time that Watkins was to have to redeem. Watkins expected to get a legacy from Wales. There was a deed written by me, signed by Watkins and his wife and probated by me, and at the same time another paper writing, according to the agreement, was drawn up by me and signed by Williams and probated by me, and delivered to Watkins."

At another part of the trial, the same witness said "The paper which I wrote at the time I wrote the deed provided that when Watkins paid back the money that Williams was out to Hadley & Dixon, then Williams was to reconvey to Watkins. No money was paid at that time, nor did Williams claim that Watkins owed him anything. I have been tax assessor and we put the land at $700 or $800."

The condition of the bond to reconvey the land to the plaintiff was, "On receiving the sum amounting in the aggregate, to-wit, one certain mortgage made to Hadley & Dixon, taken by Alfred McPherson, tax claims bid in by J. M. Stedman, together with whatsoever amount accruing or arising for the support of the family of D. S. Watkins to the date three years hence from the date of this instrument, which will be October 23, 1885."

Soon after the death of Watkins, the defendant took possession of the land and of Watkins' papers, including the aforesaid bond. The defendant was notified at the trial to produce the bond, and on failing to do so the parol evidence of Carson Johnson, above recited, was admitted in evidence, and after the plaintiff rested his case the defendant introduced the bond. His Honor charged the jury that the deed and paper writing (bond)

construed together constitute a mortgage, if they believed the evidence, and that they should answer the first issue "yes". Defendant excepted.

We think the instruction was correct, and that conclusion ends the case. The jury say on the second issue that nothing is due the defendant on the mortgage, the defendant having been in possession and receiving rents and profits since 1882.

We find no copy of the deed in the record nor any extracts from it, so we are ignorant of the recited consideration. We must infer it to be the assumption of the $50 due Hadley & Dixon, otherwise the deed would be without consideration and the grantee would hold the legal title in trust for the grantor.

The plaintiffs insist that the written evidence alone discloses an agreement that their father retained the right to redeem, which is denied by defendant. It is difficult to resist the plaintiffs' contention. It is plain that the grantor so understood and intended it, and if the grantee did not, he failed to disclose to the grantor any other purpose. The defendant's bond requires no material payment to be made, except the amount of Hadley & Dixon's $50 mortgage and the taxes then due. It discloses a great disproportion between that amount and the value of the land. Upon the face of these papers alone, we should hold that they constitute a mortgage, as was held upon very similar facts, and that time of payment is not of the essence of the contract, on the principle that "Once a mortgage always a mortgage." *Robinson* v. *Willoughby*, 65 N. C., 520; *Mason* v. *Hearne*, 45 N. C., 88; Adams' Eq., 112. The contract being in writing, his Honor properly held its nature and effect to be a matter of law for his decision. Whenever a transaction is substantially a security for debt, it be-

comes a mortgage in a court of equity, and the debtor has a right to redeem. Coote on Mortgages, 22; Fisher on Mortgages, 68. The contract may be in several instruments and the agreement (as between the parties) may be in writing or oral. *Robinson* v. *Willoughby, supra; Streator* v. *Jones,* 3 Hawks, 423.

'The writings here indicate a mortgage; and the parol proof, admitted as above stated, does not contradict, but sustains that view. When a deed is absolute on its face, nothing else appearing, the plaintiff must show by strong and satisfactory proof that a security was intended, and that the provision for redemption was omitted by reason of the ignorance of the draftsman, mistake of the parties, or undue advantage taken of the necessities of the debtor. *McDonald* v. *McLeod,* 36 N. C., 221; *Waters* v. *Crabtree,* 105 N. C., 394. A mortgage is a *security* for money loaned, and the like. There may be neither a present loan nor an antecedent debt, but the grantee may undertake to assume some outstanding liability of the grantor, or to pay off some claim against the grantor, so that an obligation to reimburse him would rest upon the grantor, and the conveyance may be intended to indemnify the grantee and to secure the performance of the grantor's future continuing obligation, in which case it would clearly be a mortgage 3 Pomeroy Eq. Jur., Section 1195, Note 1; 1 Jones' Mortgages, Section 244.

Since *Streator* v. *Jones,* 10 N. C., 423, two principles have been established and uniformly followed, when bills are preferred to convert a deed absolute on its face, into a mortgage or security for debt: 1. It must appear that the clause of redemption was omitted through ignorance, mistake, fraud or undue advantage. 2. The intention must be established, not by simple declarations

of the parties, but by proof of facts and circumstances *dehors the deed* inconsistent with the idea of an absolute purchase; otherwise, the solemnity of deeds would always be exposed to the "slippery memory of witnesses." *Kelly* v. *Bryan*, 41 N. C., 283.

The plaintiff makes no attempt to shelter himself under the first proposition, but he insists, and we think has shown, that he is protected by the second proposition.

Again, where, upon the face of a transaction it is *doubtful* whether the parties intended to make a mortgage or a conditional sale, courts of equity incline to consider it a mortgage, because, by means of conditional sales, oppression is frequently exercised over the needy. *Poindexter* v. *McCannon*, 16 N. C., 377; 3 Pomeroy Eq. Jur., Section 1195.

The oral evidence not only sustains the writings, but shows the *facts*—understanding and circumstances, so fully, that our conclusion seems to be irresistible.

Affirmed.