GEORGE J. HODGES v. FIRTH FRANKLIN HODGES AND WIFE, MAUDE E. HODGES

No. 7711SC376

(Filed 15 August 1978)

**1. Rules of Civil Procedure § 50— motion for directed verdict—waiver by introducing evidence**

By introducing evidence, defendants waived their motion for a directed verdict made at the conclusion of plaintiff's evidence.

**2. Rules of Civil Procedure § 50.3— motion for directed verdict—close of all evidence—failure to state grounds—prior motion—no fatal error**

Defendants' failure to state the specific grounds for their motion for directed verdict at the close of all the evidence as required by G.S. 1A-1, Rule 50(a) was not fatal where they stated specific grounds for their motion for directed verdict at the conclusion of plaintiff's evidence, and it must have been apparent to the court and to the plaintiff that defendants' motion was a renewal of the motion previously made and that it challenged the sufficiency of all of the evidence on the grounds previously stated.

**3. Trusts § 19— parol or constructive trust—insufficient evidence**

Plaintiff's claim that his brother held property conveyed to him by plaintiff in trust for plaintiff was not supported by evidence where there was no evidence of a fiduciary relationship between plaintiff and his brother or of any actual fraud, undue influence, breach of duty or other wrongdoing on the part of the brother, the family relationship in itself being insufficient to raise a presumption of fraud, undue influence, or other wrongdoing.

**4. Mortgages and Deeds of Trust § 1— deed and option to repurchase—insufficient evidence to show mortgage**

The evidence was insufficient to support a jury finding that plaintiff's conveyance of a one-half interest in a farm to his brother by a deed absolute in form and a contract providing plaintiff an option to repurchase constituted a mortgage where the evidence showed that plaintiff surrendered possession and control of the farm to his brother, who collected and retained all the rents, paid all the taxes on the farm, and made all necessary repairs on the buildings; the amount paid to plaintiff by his brother for the property equalled the value which plaintiff had placed on it for inheritance tax purposes; and plaintiff admitted that he was not obligated to exercise the option to repurchase.

**5. Mortgages and Deeds of Trust § 1— deed and option to repurchase—intent to create mortgage—necessary proof**

To show that an absolute deed and an option to repurchase were intended by the parties to constitute a mortgage, the plaintiff must' present more than his own simple declaration but must present proof of facts and circumstances *dehors* the deed inconsistent with the idea of an absolute purchase.

6. **Rules of Civil Procedure § 50.5— failure to direct verdict—absence of motion for judgment n.o.v.—no directed verdict by appellate court**

    An appellate court, on finding that a trial judge should have granted a motion for directed verdict made at the close of all the evidence, may not direct entry of judgment in accordance with the motion where the movant did not move in accordance with Rule 50(b)(1) for judgment n.o.v. and the trial judge did not, on his own motion, grant, deny or redeny the motion in accordance with Rule 50(b)(1). G.S. 1A-1, Rule 50(b)(2).

APPEAL by defendants from *Gavin, Judge*. Judgment entered 2 February 1977 in Superior Court, HARNETT County. Heard in the Court of Appeals 10 February 1978.

Plaintiff instituted this civil action on 30 June 1972 seeking judgment requiring defendants to reconvey to plaintiff a tract of land which plaintiff had conveyed to the male defendant, Firth Franklin Hodges, who is plaintiff's brother, by a deed absolute in form dated 5 April 1961. Plaintiff also seeks an accounting for the rents and profits from the land.

In his complaint as originally filed, plaintiff alleged that at the time he conveyed the property in 1961 a fiduciary relationship existed between him and his brother, and on that ground he prayed that defendants be adjudged to hold title to the lands in trust for the plaintiff. In the alternative, plaintiff alleged that the deed, while absolute on its face, was in fact given to secure an indebtedness, and he prayed that it be reformed and adjudged to be a mortgage, and that he be allowed to redeem. Defendants answered, denying that any fiduciary or trust relationship existed between the brothers or that the deed secured an indebtedness. In a further answer, defendants alleged that on 5 April 1961 plaintiff sold and conveyed the land to the defendant, Firth Franklin Hodges, for $25,000.00, that on 6 April 1961 defendants granted plaintiff an option to repurchase the land for the same price subject to certain adjustments as provided in the option contract, that plaintiff had until 10 September 1964 to exercise the option, and that he had failed to do so.

Evidence presented at the trial shows the following: On the death of their mother intestate in 1960, plaintiff (George) and his brother (Firth), inherited as tenants in common a farm of 176 acres in Harnett County, N. C. In December 1960 they divided the farm by cross deeds, each thereby becoming sole owner of a

separate tract, the tract then received by plaintiff being the land
which is the subject of this action. Plaintiff testified that in his
opinion the fair market value of the entire farm before it was
divided was $75,000.00 and the value of the tract which he re-
ceived was $40,000.00. As administrator of his mother's estate
plaintiff valued the entire farm at $50,000.00 for inheritance tax
purposes.

At that time plaintiff lived in Raleigh, where he was engaged
in the trucking business. Being indebted to the bank and needing
funds in his business, plaintiff first tried to sell his brother a part
interest in the business, but Firth was not interested. After fur-
ther discussions, the brothers agreed to an arrangement under
which plaintiff would convey his separate tract to Firth, who
would then use the entire farm as security for a loan of $25,000.00
to be obtained from Metropolitan Life Insurance Company, plain-
tiff would receive this $25,000.00, and Firth would give plaintiff
an option to buy back his separate tract for the price of
$25,000.00, the price to be adjusted upward to take into account
any interest on the loan from Metropolitan, taxes, insurance, and
cost of necessary improvements paid by Firth, offset by any rent-
als received by him from the land. There were initial discussions
about making the term of the option five years, but Firth felt this
was too long, and a term of three and a half years was agreed
upon. Pursuant to this arrangement, plaintiff applied in Firth's
name to Metropolitan for the loan, employed an attorney to cer-
tify the title and prepare all necessary papers, arranged for a
survey and for title insurance, and at his own expense did
everything necessary to consummate the transaction. When all
papers were prepared, plaintiff flew to Detroit, where Firth and
his wife were then living, taking with him the deed conveying fee
simple title to the property to Firth, the note and deed of trust to
Metropolitan, the $25,000.00 check from Metropolitan (which was
payable to Firth and to the attorney), and the option agreement.
Firth and his wife signed the note and signed and acknowledged
the deed of trust and the option agreement, and Firth endorsed
the check. Plaintiff then brought all documents back to North
Carolina, where the deed, deed of trust, and option agreement
were recorded and the loan closed. Plaintiff paid all expenses and
received for his own use the entire $25,000.00 proceeds of the
loan from Metropolitan.

As finally prepared by plaintiff's attorney, the option agreement, which was dated and executed 6 April 1961, provided that it should "exist and continue for a period of three and one-half years from the date of the execution of this agreement; however, in no event any later than September 10, 1964," and further provided "[t]hat if the said party of the second part [the plaintiff herein] shall fail to exercise this option on or prior to September 10, 1964, then all rights under this option are to be forfeited."

On 10 September 1964 plaintiff sent Firth the following telegram:

September 10, 1964. This is to advise that I will be ready, willing, and able to exercise my rights contained in that certain option dated April 6, 1961, on or before the final date required under the terms of said option. You will, therefore, execute and deliver to your attorney in Dunn, North Carolina, a good and sufficient deed conveying the subject property to me in order that we may close the matter as above specified.

However, plaintiff never tendered any money in exercise of his rights under the option and no deed was ever tendered back to him by the defendants.

After delivery of the deed dated 5 April 1961 by which plaintiff conveyed fee simple title to his brother, Firth, the latter took control of the property to the exclusion of the plaintiff. Prior to the conveyance, the entire farm had already been rented to a tenant for 1961 for the annual rental of $3200.00. Plaintiff had received his portion of this rental for the year 1961 prior to delivering the deed conveying the property to Firth, and plaintiff retained this rental which he had already received. For all subsequent years, defendants exercised complete control over the property, receiving all rentals therefrom, paying the taxes thereon, maintaining insurance on the buildings, making all repairs and improvements, and paying all installments of the principal and interest on the loan from Metropolitan. This loan was finally paid and satisfied in full by the defendants on 5 January 1972. Plaintiff instituted this action on 30 June 1972.

Other evidence presented at the trial will be referred to in the opinion.

During the trial and at the close of his evidence, plaintiff moved pursuant to G.S. 1A-1, Rule 15(b), and was allowed to amend his complaint to add allegations relative to the option contract, which had not been mentioned in the original complaint, and to allege "[t]hat at the time said deed and contract were executed and delivered the relationship of debtor and creditor did exist and does now exist between the plaintiff and the defendant, Firth Franklin Hodges," and to further allege "[t]hat said deed and contract were intended to constitute and did constitute a mortgage upon the lands described therein." Defendants also moved and were allowed to amend their answer to plead the defense of laches.

Issues were submitted to the jury and answered as follows:

1. Were the deed from George J. Hodges to Firth Franklin Hodges executed April 6, 1961, and recorded in Book 398, at Page 574, and the contract and option executed by the defendants and the plaintiff on April 6, 1961, and recorded in Book 403, at Page 247, intended as security for a loan as alleged in the Complaint?

Answer: Yes

2. Do the defendants hold title to the land described in the Complaint in trust for the plaintiff as alleged in the Complaint?

Answer: Yes

The parties had stipulated that in event the jury should answer the issues in favor of the plaintiff, the accounting prayed for by the plaintiff would be conducted by a referee to be appointed by the court. In accord with this stipulation and the jury's verdict, the court entered judgment adjudging that defendants hold title to the land in controversy in trust for plaintiff, adjudging that the deed and option contract constitute a mortgage which plaintiff is entitled to redeem, and ordering that an accounting be had to determine what balance is owed between the parties. From this judgment, defendants appeal.

*Johnson and Johnson by W. A. Johnson for plaintiff appellee.*

*McCoy, Weaver, Wiggins, Cleveland & Raper by Richard M. Wiggins and Elmo R. Zumwalt III, and Mast, Tew, Nall & Moore by George B. Mast for defendants appellants.*

PARKER, Judge.

[1]  At the conclusion of plaintiff's evidence and again at the close of all evidence, defendants moved for a directed verdict pursuant to G.S. 1A-1, Rule 50. These motions were denied, and defendants now assign error to these rulings. By introducing evidence, defendants waived their first motion, *Overman v. Products Co.*, 30 N.C. App. 516, 227 S.E. 2d 159 (1976), and their assignment of error directed to the denial of that motion will not be considered on this appeal.

[2]  Plaintiff contends that defendants are not entitled on this appeal to rely upon their assignment of error directed to the denial of their second motion, made at the close of all evidence, because in making that motion defendants failed to "state the specific grounds therefor" as required by G.S. 1A-1, Rule 50(a). Plaintiff correctly points out that this requirement is mandatory. *Wheeler v. Denton*, 9 N.C. App. 167, 175 S.E. 2d 769 (1970). "However, the courts need not inflexibly enforce the rule when the grounds for the motion are apparent to the court and the parties." *Anderson v. Butler*, 284 N.C. 723, 729, 202 S.E. 2d 585, 588 (1974). In the present case, when defendants made their first motion for a directed verdict at the conclusion of plaintiff's evidence, they stated that they did so "for the reason that Plaintiff has not made a case sufficient to be submitted to the jury in that Plaintiff's evidence shows conclusively that the transaction alleged does not constitute a mortgage but rather a deed with option to purchase and there was no evidence sufficient to be submitted on the issue of a constructive trust." When defendants again moved for a directed verdict at the close of all of the evidence, it must have been apparent to the court and to the plaintiff that their motion was a renewal of the motion previously made, this time challenging the sufficiency of all of the evidence on the grounds previously stated. Hence, defendants' failure to restate the specific grounds for their motion will not be deemed fatal, and we will review the questions presented by defendants' assignment of error directed to the denial of their motion for directed verdict made at the close of all of the evidence.

[3]  At the outset we note that there was no evidence to support plaintiff's claim for relief based on his allegations that a fiduciary relationship existed between him and his brother and that defend-

ants hold title in trust for the benefit of the plaintiff. On the contrary, all of the evidence shows that plaintiff and his brother, both of whom were adult businessmen, dealt with each other at arm's length throughout, each seeking to obtain the best bargain which his needs and circumstances would permit. All of the evidence shows that the two brothers had little direct contact, one living in North Carolina and the other in Michigan. The transaction occurred at plaintiff's, rather than at defendants', instance. All instruments involved were prepared by plaintiff's attorney, and plaintiff had ample opportunity to read and understand them before they were signed. There was no evidence of any actual fraud or undue influence by anyone, and the family relationship which existed between plaintiff and his brother by itself raises no presumption of fraud or undue influence. *Walters v. Bridgers*, 251 N.C. 289, 111 S.E. 2d 176 (1959); *Cornatzer v. Nicks*, 14 N.C. App. 152, 187 S.E. 2d 385 (1972). There was no evidence that plaintiff conveyed title to his brother under any express parol trust that it should be held for plaintiff's benefit, nor would such evidence, if presented, have availed to sustain plaintiff's claim, for a grantor may not impose a parol trust for his benefit on land which he conveys by deed purporting to vest absolute title in the grantee. *Willetts v. Willetts*, 254 N.C. 136, 118 S.E. 2d 548 (1961).

Nor was there any evidence to justify a court of equity in imposing a constructive trust in the present case. Describing a constructive trust, Lake, J., speaking for our Supreme Court, said:

A constructive trust is a duty, or relationship, imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust. . . . [A] constructive trust is a fiction of equity, brought into operation to prevent unjust enrichment through the breach of some duty or other wrongdoing. It is an obligation imposed irrespective of the intent with which such party acquired the property, and in a well-nigh unlimited variety of situations. [Citations omitted.] Nevertheless, there is a common, indispensable element in the many types of situations out of which a constructive trust is deemed to arise. This common element is *some fraud, breach of duty or other wrongdoing*

by the holder of the property, or by one under whom he claims, the holder, himself, not being a bona fide purchaser for value.

*Wilson v. Development Co.*, 276 N.C. 198, 211-212, 171 S.E. 2d 873, 882 (1970). (Emphasis added.) As above noted, there was no evidence in the case now before us of any actual fraud, breach of duty, or other wrongdoing by the defendants, and the family relationship gave rise to no presumption of any. Therefore, the court erred in failing to grant defendants' motion for a directed verdict as to plaintiff's claim for relief based on his allegations that defendants hold title in trust for his benefit.

[4] We now turn to plaintiff's claim for relief based on his allegations that at the time the deed and contract providing plaintiff an option to repurchase were executed and delivered the relationship of debtor and creditor existed between him and his brother, Firth, and that the deed and contract together were intended to constitute and did constitute a mortgage. Cases involving similar arrangements, but each with its own particular factual background, have many times been before the courts of this and other jurisdictions. *See Hardy v. Neville*, 261 N.C. 454, 135 S.E. 2d 48 (1964); *Ricks v. Batchelor*, 225 N.C. 8, 33 S.E. 2d 68 (1945); *Ferguson v. Blanchard*, 220 N.C. 1, 16 S.E. 2d 414 (1941); *O'Briant v. Lee*, 214 N.C. 723, 200 S.E. 865 (1939); *Watkins v. Williams*, 123 N.C. 170, 31 S.E. 388 (1898); *King v. Kincey*, 36 N.C. 187 (1840); *Trust Co. v. Morgan-Schultheiss* and *Poston v. Morgan-Schultheiss*, 33 N.C. App. 406, 235 S.E. 2d 693 (1977); Annot., 79 A.L.R. 937 (1932), *supplemented in* Annot., 155 A.L.R. 1104 (1945). Long ago, Chief Justice John Marshall, dealing with the distinction between a mortgage and a sale with option to repurchase, said:

> To deny the power of two individuals, capable of acting for themselves, to make a contract for the purchase and sale of lands defeasible by the payment of money at a future day, or, in other words, to make a sale with a reservation to the vendor of a right to repurchase the same land at a fixed price and at a specified time, would be to transfer to the Court of Chancery, in a considerable degree, the guardianship of adults as well as of infants. Such contracts are certainly not prohibited either by the letter or the policy of the law. But

the policy of the law does prohibit the conversion of a real mortgage into a sale. And as lenders of money are less under the pressure of circumstances which control the perfect and free exercise of the judgment than borrowers, the effort is frequently made by persons of this description to avail themselves of the advantage of this superiority, in order to obtain inequitable advantages. For this reason the leaning of courts has been against them, and doubtful cases have generally been decided to be mortgages. But as a conditional sale, if really intended, is valid, the inquiry in every case must be, whether the contract in the specific case is a security for the repayment of money or an actual sale.

*Conway v. Alexander*, 11 U.S. (7 Cranch) 218, 236-37, 3 L.Ed. 321, 328 (1812).

Dealing with the same problem, Devin, J. (Later C.J.) speaking for our own Supreme Court in *Ferguson v. Blanchard, supra*, at 7-8, 16 S.E. 2d at 418, said:

It is true that when a debtor conveys land to a creditor by deed absolute in form and at the same time gives a note or otherwise obligates himself to pay the debt, and takes from the grantee an agreement to reconvey upon payment of the debt, the transaction is a mortgage. *Robinson v. Willoughby*, 65 N.C. 520. But if the agreement leaves it entirely optional with the debtor whether he will pay the debt and redeem the land or not, and does not bind him to do so, or continue his obligation to pay, the relationship of mortgagor and mortgagee may not be held to continue unless the parties have so intended. . . .

Whether any particular transaction amounts to a mortgage or an option of repurchase depends upon the real intention of the parties, as shown on the face of the writings, or by extrinsic evidence, and the distinction seems to be whether the debt existing prior to the conveyance is still left subsisting or has been entirely discharged or satisfied by the conveyance. If no relation whatsoever of debtor and creditor is left subsisting, the transaction is a sale with contract of repurchase, since there is no debt to be secured.

**[5]**  From the foregoing authorities, it is apparent that the crucial problem in a case such as is now before us is to ascertain the true intention of the parties at the time of their transaction. If in the present case plaintiff and his brother intended to create a debt which plaintiff was obligated to repay to his brother, with the land being conveyed merely as security, then the transaction was a mortgage. If, on the other hand, they did not intend to create any debt, there would have then been no debt to secure, and the transaction would have been no more than what it purported to be on its face, *i.e.*, an absolute sale with an option granted back to the plaintiff to repurchase within a specified time. In ascertaining the real intention of the parties, however, the simple declaration of the plaintiff, who was grantor in the deed, will not suffice to show that the parties intended to create a mortgage. Quoting from earlier cases, our Supreme Court, in *O'Briant v. Lee, supra* at 731, 200 S.E. at 870, noted that:

> The intention [to create a mortgage] must be established, not by simple declaration of the parties, but by proof of facts and circumstances *dehors* the deed inconsistent with the idea of an absolute purchase; otherwise, the solemnity of deeds would always be exposed to the "slippery memory of witnesses."

Thus, although plaintiff in the present case repeatedly testified that the transaction was intended to be a loan and that the land was conveyed to his brother for the sole purpose of securing the payment of that loan, to withstand defendants' motion for directed verdict it was necessary for plaintiff to present more than his own simple declaration and to present proof of facts and circumstances *dehors* the deed inconsistent with the idea of an absolute purchase. This he failed to do.

**[4]**  The grantee in an absolute deed normally takes immediate possession of the property. A mortgagee normally does not. Here, plaintiff admitted that he completely surrendered possession and control of the farm to his brother. Plaintiff testified that "[o]n the day that I gave him the deed I gave him possession of the farm," and he did not dispute defendants' testimony that after 1961 defendants collected and retained all of the rents, paid all taxes on the farm, and made all necessary repairs on the buildings. Plaintiff's surrender of possession and control as well as his long

acquiescence in defendants' possession of the farm is more consistent with an absolute sale than a mortgage.

In a mortgage transaction, the amount of money loaned is usually substantially less than the fair market value of the property given as security. In a sale, the amount paid for the property is usually more nearly equivalent to its fair value. In the present case, witnesses gave as their estimates of fair market value of the entire farm in 1961 figures ranging from $45,000.00 to $100,000.00, but of the six estimates of value, only one was greater than $75,000.00. Plaintiff himself testified that in his opinion the fair market value of the entire farm in 1961 was $75,000.00, but he admitted that he had valued it for inheritance tax purposes at $50,000.00, a figure entirely consistent with the sale of his one-half portion for $25,000.00.

Plaintiff contends that certain language used by defendant Firth, while testifying, indicates the existence of a debt. We do not agree. In referring to the expiration of the option to repurchase, the defendant stated that plaintiff had a certain period of time within which to "pay the money off" and to "pay me back." We find these expressions as consistent with an absolute deed with option to repurchase as they are with the existence of a mortgage debt. Plaintiff also points to the testimony of his witness, Y. T. Jernigan, who had leased the farm in 1961, that he had "heard Firth say that he loaned George Twenty-Five Thousand Dollars." However, the witness did not testify when, or in what connection, he had heard this statement made. While this bit of evidence is inconsistent with the idea of a sale, it is of such scant probative value as to be insufficient, in itself, to carry plaintiff's case to the jury.

While all of the evidence of the circumstances surrounding the transaction tend to negate plaintiff's allegation that the deed and option constituted a mortgage, it is perhaps even more important that plaintiff admitted on the stand that he was not obligated to exercise the option. As above noted, the inquiry in this case focuses on the existence of a debt. If there is a subsisting debt, then plaintiff is obviously under a duty to repay the debt, and the transaction may properly be characterized as a mortgage. On the other hand, there is no debt, and thus no mortgage, if plaintiff is not obligated to repay. In this connection, on cross-examination plaintiff testified:

I knew and understood the terms of my option and that I could exercise my rights anytime during the period of time. I also knew that *I had the right to do it or not to do it at my own choice* and I tried to do all I could to get it done. [Emphasis added.]

The effect of this testimony is an admission that plaintiff was not obligated to repay defendant, thereby negating the existence of a debt.

[6] In our opinion, and we so hold, the court should have granted defendants' motion for a directed verdict made at the close of all the evidence. We may not, however, direct entry of judgment in accordance with the motion. Defendants did not move in accordance with Rule 50(b)(1) for judgment notwithstanding the verdict, nor did the trial judge on his own motion grant, deny or redeny the motion in accordance with Rule 50(b)(1). Under these circumstances, Rule 50(b)(2) expressly provides that the appellate court, on finding that a trial judge should have granted a motion for directed verdict made at the close of all the evidence, may not direct entry of judgment in accordance with the motion. *Britt v. Allen*, 291 N.C. 630, 231 S.E. 2d 607 (1977).

We do not pass on defendants' remaining assignments of error, which are primarily directed to the court's instructions to the jury and some of which appear to have merit, since in any event this case will be remanded to the superior court for a new trial at which the errors complained of are not likely to occur.

Upon a new trial, defendants will have the opportunity to present evidence in support of their defense of laches. *See Taylor v. City of Raleigh*, 290 N.C. 608, 227 S.E. 2d 576 (1976); *Teachey v. Gurley*, 214 N.C. 288, 199 S.E. 83 (1938); *McRorie v. Query*, 32 N.C. App. 311, 232 S.E. 2d 312 (1977).

New trial.

Judges MARTIN and WEBB concur.