HIGH POINT BANK AND TRUST COMPANY, PLAINTIFF v. MORGAN-SCHULTHEISS, INC., A CORPORATION; CLARENCE V. MATTOCKS, SUBSTITUTED TRUSTEE; EVELYN H. POSTON AND JANICE E. POSTON, DEFENDANTS AND EVELYN H. POSTON, PLAINTIFF v. MORGAN-SCHULTHEISS, INC., A NORTH CAROLINA CORPORATION, DEFENDANT

No. 7618SC857

(Filed 15 June 1977)

1. **Attorneys at Law § 6— withdrawal of attorney**

The attorney-client relationship may, in good faith, be dissolved at any time as between the attorney and his client, but the attorney may not be released from litigation in which he appears for the client without first satisfying the court that his withdrawal therefrom is justified, and whether he is justified will depend on the circumstances of that particular situation.

2. **Attorneys at Law § 6; Rules of Civil Procedure § 56— summary judgment hearing — absence of appellants' counsel — no "counsel of record"**

The court did not err in conducting a summary judgment hearing without the presence of appellants' counsel and without the withdrawal of appellants' counsel pursuant to Rule 16 of the Superior and District Court Rules where the only document indicating that appellants were represented by counsel was a stipulation extending the time to plead, the motion for summary judgment was personally served upon the appellants, appellants' answer was signed and filed by appellants *in propria persona*, appellants stated at the hearing that they were appearing without an attorney, and the statement by one appellant that she had talked with an attorney by telephone the day before did not reveal an attorney-client relationship, since there was no "counsel of record" within the contemplation of Rule 16.

3. **Mortgages and Deeds of Trust § 1— warranty deed and option to repurchase — sale or mortgage**

There was a genuine issue of material fact as to whether a warranty deed and a separate agreement giving the grantor the option to repurchase within a specified time constituted a sale with an option to repurchase or a mortgage where there was evidence presented on the motion for summary judgment tending to show that the grantor was in financial distress and was desperately attempting to secure a loan; the grantee agreed that it would borrow $60,000 from a bank to pay the grantor for the property and would secure the note with a deed of trust on the property; the grantor was given an option to repurchase for $65,000 plus interest and charges paid by the grantee on the $60,000 bank loan; the grantor was given the right to possession of the property during the option period; the grantor was given the right to try to sell the property, and the grantee was given the right of first refusal to buy at the price offered by a prospective purchaser in the event the grantor secured a purchaser for an amount sufficient to exercise the option to repurchase; an attorney's fee paid

Trust Co. v. Morgan-Schultheiss and Poston v. Morgan-Schultheiss

by the grantor included the fee for title search and certification of title to the bank furnishing the $60,000 to the grantee; the value of the property conveyed was between $77,400 and $150,000; and the grantor thought a loan was being arranged and never agreed to sell all of her property.

**4. Appeal and Error § 16— appeal from summary judgment — default judgments on counterclaims — jurisdiction**

Where it is clear that defendant's motion for summary judgment, filed the same day as an answer setting up counterclaims, was directed only to plaintiff's principal action, an appeal from an order allowing defendant's motion for summary judgment did not deprive the court of jurisdiction to enter default judgments on the counterclaims.

**5. Judgments § 14— default judgment — claim not actually counterclaim**

The court erred in entry of default judgment on a purported counterclaim for failure to answer where the purported counterclaim amounted to no more than a denial of the allegations in plaintiff's complaint, was not in effect a counterclaim, and thus required no answer by plaintiff.


## No. 76CVS1402

BEFORE *Wood, J.* Summary judgment entered 8 April 1976 in Superior Court, GUILFORD County. Appeal by Evelyn H. Poston and Janice E. Poston.

## No. 76CVS2096

Before *Wood, J.* Summary judgment entered 8 April 1976 in Superior Court, GUILFORD County. Appeal by Evelyn H. Poston.

Before *Long, J.* Default judgment entered 24 May 1976 in Superior Court, GUILFORD County. Appeal by Evelyn H. Poston.

Before *Rousseau, J.* Order dimissing appeal entered 30 August 1976 in Superior Court, GUILFORD County. Appeal by Evelyn H. Poston.

Heard in the Court of Appeals 13 April 1977.

These two actions have been consolidated for purpose of appeal. The first action (#76CVS1402), brought by High Point Bank and Trust Company on 15 January 1976, is to obtain judgment for the principal and interest due on a $60,000 note and costs, together with judicial foreclosure of the deed of trust by which the note was secured. Morgan-Schultheiss is the maker of the note and executed the deed of trust. Clarence V. Mat-

tocks is the substitute trustee under the deed of trust. Evelyn H. Poston and Janice E. Poston are residing on the property described in the deed of trust. They were made parties as having an interest in the subject matter based on their continued occupancy of the property and their claim of ownership. The complaint asked, *inter alia,* that ". . . EVELYN H. POSTON and JANICE E. POSTON be ordered and directed to vacate said real property and to surrender possession of said real property to the Plaintiff; that it be adjudicated that EVELYN H. POSTON and JANICE E. POSTON have no right, title or interest in and to said real property and that sale of said property by the Substituted Trustee will pass title to said real property free and clear of any and all claims on the part of EVELYN H. POSTON and JANICE E. POSTON. . . ."

All defendants answered. Morgan-Schultheiss, Inc., admitted the execution of the note and deed of trust and that the note was in default. As its first defense, it alleged that there was then pending an action entitled "Evelyn H. Poston vs. Morgan-Schultheiss, Inc." (Filed No. 76CVS2096) which related to Evelyn H. Poston's claim to the equity of redemption in the property. In that action Morgan-Schultheiss had set up four counterclaims which were actions to quiet title, for rents, in ejectment, and for abuse of process. It asked that the bank's action not be heard or determined until the matters contained in the Poston action had been adjudicated or in the alternative, that the two actions be consolidated for trial. As a further answer and defense and counterclaim, and as a cross-claim against the defendants, it asked that, should the indebtedness be paid, the court order that Morgan-Schultheiss be entitled to possession of the real property and that the Postons be ordered to vacate the property and surrender possession to Morgan-Schultheiss.

Defendants Poston answered admitting the note and deed of trust and admitting that they are in possession and that they claim an equity of redemption in the property.

Plaintiff moved for summary judgment in #76CVS1402. In support of the motion, plaintiff filed a copy of agreement between Evelyn H. Poston and Morgan-Schultheiss, under which it was agreed that Morgan-Schultheiss would buy the property in question from Evelyn Poston; that it would borrow the $60,000 purchase price and secure the note with a deed of trust

conveying the property; that all liens and encumbrances against the property, except a deed of trust to Perpetual Savings and Loan Association, would be paid and satisfied by record at the time of closing; that J. V. Morgan, Attorney, would hold as trustee a sufficient amount of the purchase price to satisfy that indebtedness in the event that seller's husband did not comply with a court order to make those payments; that seller was given an option to repurchase the property on or before 1 February 1975 upon the payment to buyer of $65,000 plus all interest and charges paid by buyer to the bank on the $60,000 loan; that seller would retain possession of the property until 1 February 1975, but in the event she failed to repurchase the property she would remove all her personal belongings from the property and surrender the property to buyer on or before 15 February 1975; that seller was privileged to try to sell the property and in the event she secured a purchaser for all or any part of the land for an amount sufficient to repurchase from buyer, she would give buyer first refusal to buy at the price offered by the prospective purchaser. The bank also filed a copy of the deed from Evelyn Poston to Morgan-Schultheiss, a copy of the $60,000 note to the bank from Morgan-Schultheiss, a copy of the deed of trust securing the note, and a copy of the instrument substituting Clarence V. Mattocks as trustee under the deed of trust.

Morgan-Schultheiss filed a response to the motion setting up the same matters and things averred in its answer to the complaint. The Postons filed no response, nor did they file any affidavits in opposition to the motion.

Judge Wood conducted a hearing on the motion and "heard the evidence presented by the plaintiff and by the defendants, Morgan-Schultheiss, Inc., Evelyn H. Poston and Janice E. Poston." On 8 April 1976, he entered an order in #76CVS1402 concluding that no genuine issue existed as to any material fact, and granted summary judgment in favor of plaintiff and ordered (1) plaintiff shall have judgment against Morgan-Schultheiss, Inc., in sum of $60,000 plus interest, (2) plaintiff is entitled to possession of the property for the purpose of enforcing its rights under the deed of trust, (3) Evelyn H. Poston and Janice E. Poston shall immediately vacate the property and surrender possession to plaintiff, (4) the substituted trustee shall proceed to foreclosure sale and the sale should be free and clear of any and all claims to the property on the part of

the Postons, (5) Morgan-Schultheiss, Inc., shall be entitled to exercise its equity of redemption by paying the indebtedness, with interest and costs.

To the entry of this judgment on 8 April 1976 Evelyn H. Poston and Janice E. Poston excepted and gave notice of appeal.

The action of Evelyn H. Poston against Morgan-Schultheiss, Inc. (#76CVS2096) was filed on 17 February 1976. The pertinent portions of the complaint are as follows:

"3. Plaintiff Evelyn H. Poston, did, on or about the first day of August, 1974, execute and deliver to the defendant corporation herein a certain deed which was in form a warranty deed, a copy of which is attached hereto and marked Exhibit 'A' and incorporated herein by reference, said deed being recorded in deed book 2741, page 890, Guilford County, North Carolina.

4. The above-mentioned deed was executed contemporaneously with the execution of an agreement, a copy of which is attached hereto and marked Exhibit 'B' and incorporated herein by reference, said Exhibit 'B' has been once amended by amendment marked as Exhibit 'C,' a copy of which is attached hereto and incorporated herein by reference; plaintiff is informed, believes and alleges that the deed mentioned in paragraph 3 above, the written agreements mentioned herein above in paragraph 4, and a letter written to Morgan, Byerly, Post and Herring, attorneys at law, attached hereto as Exhibit 'D' and incorporated herein by reference, do collectively comprise the agreement between the plaintiff and the defendant, together also with certain verbal representation among the parties hereto and the individual agents of the corporate defendant and a certain deed of trust from said corporate defendant in favor of High Point Bank and Trust Company on the face amount of sixty thousand and no/100 ($60,000.00) dollars and being of record in deed of trust book 2696, page 357, in Guilford County, North Carolina.

5. All of the above-mentioned recorded instruments of conveyance, agreements, extensions and renewals, do, when taken together, clearly show that it was the intent of all parties involved that the deed from plaintiff Evelyn H.

Poston, to the corporate defendant should have the effect of a mortgage deed or security instrument, leaving an equity of redemption in Evelyn H. Poston, plaintiff, and should not be construed as a warranty deed, taking absolute effect as a conveyance of fee simple title to the corporate defendant.

6. Plaintiff is further informed, believes and alleges that for the reasons set out above, the above-mentioned deed should be reformed in order to give it effect of a mortgage or deed of trust only and no foreclosure should be allowed except on terms that are both just and equitable under said instrument as it would be reformed."

Plaintiff further alleged that the reasonable fair market value of the property is $150,000 and that defendant will be unjust'y enriched if the deed is not reformed into a mortgage or deed of trust and foreclosure conducted; that a clause allowing her to redeem was omitted by reason of ignorance and mistake on her part induced by fraud, duress, undue influence and imposition on the part of or on behalf of defendant. She prayed that the deed be reformed and that she be allowed to assume the obligation of defendant to the bank and be given 90 days during which she would not be subject to foreclosure by the bank. With the complaint, she filed a notice of lis pendens.

Defendant answered, denying the material portions of the complaint, but admitting the execution of the deed, agreement, and extension of time for the option to repurchase. It set up the defense of estoppel and, in the alternative, asked that should the court reform the deed, the court order a sale of the lands and direct that from the proceeds of sale the $60,000 note and all accumulated interest be paid and then defendant be repaid all interest paid by it to the bank upon the note.

Counterclaims to quiet title, for rents, in ejectment, and for abuse of process were included in the answer.

On 27 February 1976, defendant moved for summary judgment in #76CVS2096. Notice of the motion was served on plaintiff on 16 March 1976. The notice set out the depositions, interrogatories, affidavits, etc., on which defendant would rely at the hearing of the motion.

On 30 March 1976, defendant moved for entry of default by plaintiff and judgment against plaintiff for failure to plead

to the counterclaims. Default was entered on 30 March 1976 upon each of the four counterclaims asserted by defendant and default judgments were entered on the counterclaims. In the judgment as to the first counterclaim, the notice of lis pendens was vacated. The judgments on the second and fourth counterclaims left the matter of damage for determination. These were subsequently set aside, and plaintiff was given an extension of time to 3 May 1976 within which to plead.

On 8 April 1976, Judge Wood allowed defendant's motion for summary judgment in #76CVS2096 and vacated the notice of lis pendens. From this order, plaintiff, Evelyn H. Poston, excepted and gave notice of appeal.

On 13 May 1976, defendant again moved for entry of default and default judgment supporting its motion with an affidavit. Copies were served on plaintiff's then attorney of record. Entry of default was entered and plaintiff excepted. Defendant filed written "motion and application for default judgment" and copy, together with copy of notice setting the motion for hearing on 24 May 1976, was served on plaintiff's counsel. Plaintiff responded to the motion and opposed it on the ground that a final judgment dismissing the action had been filed on 8 April 1976 from which plaintiff had appealed. On 24 May 1976, Judge Long entered default judgments on the four counterclaims. Plaintiff excepted and gave notice of appeal as to each judgment.

On 9 June 1976, plaintiff moved to set aside the default judgments. The motion was heard 28 June 1976, and order entered denying the motion on 2 July 1976. No exception was taken to this order and no notice of appeal given.

On 1 July 1976, plaintiff applied for and was given additional time within which to serve "Record on Appeal from the Default Judgment dated May 24, 1976." By order dated 2 August 1976, another extension to 30 days after 2 August 1976 was granted.

With respect to the appeal from the summary judgment entered in each case on 8 April 1976, the time allowed for service of the record on appeal expired 18 May 1976. An additional 45 days was granted on 12 May 1976, and another 30 days was granted on 2 July 1976. On 2 August 1976, the time was again extended for "20 additional days after August 2, 1976."

On 4 September 1976, after the time for serving the record on appeal from the default judgments had expired, counsel for plaintiff moved that the appeals be consolidated and that the court recommend to this Court that an additional reasonable time be granted for filing the record on appeal. The court entered an order consolidating the appeals; extending the time for serving the record on appeal to 15 September 1976; and requesting this Court to grant a reasonable additional time.

The order of 2 August 1976 extending the time for serving record on appeal bears no filing date, nor does the 4 September 1976 motion and order, although all other motions and orders do bear a filing date. It appears from the record that these were not in the Clerk's file. In any event, on 17 August 1976, defendant moved to dismiss plaintiff's appeal for failure to perfect. This motion was granted by an order entered 30 August 1976 by Judge Rousseau. Plaintiff excepted and gave notice of appeal.

*Jenkins, Lucas, Babb & DeRamus, by F. Gaither Jenkins and Judson D. DeRamus, Jr., for appellants, Evelyn H. Poston and Janice E. Poston.*

*Haworth, Riggs, Kuhn, Haworth & Miller, by John Haworth, for High Point Bank & Trust Company, appellee.*

*Frank B. Wyatt for Morgan-Schultheiss, Inc., appellee.*

MORRIS, Judge.

It is apparent from the record that appellants have been represented throughout this litigation by a succession of attorneys. While each counsel undertaking to represent appellants has been able and competent, the entry and withdrawal of so many different attorneys would obviously account for the confused state of the record. It appears that counsel on appeal did not represent appellants until after the order of 2 August 1976 was entered but did prepare the last motion for extension of time, consolidation, and request for recommendation of the trial court to this Court.

We believe a more orderly procedure requires the disposition of the appeal in the case of *High Point Bank and Trust Company v. Morgan-Schultheiss, Inc., Clarence V. Mattocks, Evelyn H. Poston, and Janice E. Poston.* Appellants' only as-

signment of error as to this appeal is that the court erred in entering summary judgment.

[1]   As a part of their argument under this assignment of error, appellants contend that with respect to the proceedings of 7 April 1976—the hearing on the motion for summary judgment—any order entered without the participation of their counsel was void. Appellants take the position that the court had the duty to see that their counsel of record had properly withdrawn pursuant to Rule 16 of the Superior and District Court Rules. Rule 16 provides:

> "No attorney who has entered an appearance in any civil action shall withdraw his appearance, or have it stricken from the record, except on order of the court. Once a client has employed an attorney who has entered a formal appearance, the attorney may not withdraw or abandon the case without (1) justifiable cause, (2) reasonable notice to the client, and (3) the permission of the court."

As between the attorney and his client, the relationship may, in good faith, be dissolved at any time, but the attorney may not be released from litigation in which he appears for the client without first satisfying the court that his withdrawal therefrom is justified, and whether he is justified will depend on the circumstances of that particular situation. *Smith v. Bryant,* 264 N.C. 208, 141 S.E. 2d 303 (1965).

[2]   The record indicates that the hearing on the motion for summary judgment was held at the 29 March 1976 Civil Session of Guilford Superior Court. The notice thereof indicated that the motion would be calendared for hearing at that session with the hearing to begin at 10 o'clock on 5 April 1976 or as soon thereafter as the matter could be heard. Prior to that time the only document indicating that appellants were represented by counsel was a stipulation extending the time to plead. This stipulation was signed by counsel for the bank and by Norman B. Smith, attorney for Evelyn H. Poston and Janice E. Poston. The stipulation is not dated, but it extended the time to file answer or otherwise plead to and including 29 March 1976. It was filed on 1 April 1976. Defendants Postons' answer was filed on 31 March 1976 and was signed by each of them without any indication that they were represented by counsel.

The transcript of the evidence taken at the hearing reveals that upon questioning by the court Janice Evelyn Poston testi-

fied: "We do not have an attorney." Evelyn H. Poston was examined by the court. She testified: "Our attorney at this point is Mr. Wesley Bailey of Winston, who could not be here this morning. Last evening Mr. Norman Smith told my daughter that the only reason he discontinued representing us was the fact that Mr. Roy Morgan and Mr. Schultheiss said they would sue him if he continued representing us. We have not paid Mr. Wesley Bailey a fee because we just talked by telephone. We first talked with Mr. Bailey yesterday. I am appearing today without counsel." Nowhere else in the record does Mr. Bailey's name appear. Nor does Mrs. Poston's testimony reveal an attorney-client relationship. Thereafter the Postons were apparently represented by Paul B. Stam, Sr., for a short while and then Renn Drum, Jr., for a short while. No order releasing any counsel appears of record. It is obvious that Mr. Smith withdrew from representing appellants, if he ever did in fact represent them for any purpose other than obtaining a stipulation for extension of time within which to plead, some time prior to the scheduled hearing. The motion for summary judgment was served on Mr. Smith as counsel for the Postons on 10 March 1976, but on 15 March 1976 the notice of hearing was served upon the Postons. This would indicate that the Postons were not then represented by Mr. Smith or any other counsel. The cross-claims of Morgan-Schultheiss were also served on the Postons individually. The answer of the Postons, although filed after the time for answer had expired, was signed by them and filed by them *in propria persona* on 31 March 1976. The record is clear that this is not a situation where counsel withdraws on the day of hearing and leaves the client surprised and without time to obtain counsel. Nor is there any indication that they were prejudiced by the fact that they were not represented by counsel. Mrs. Evelyn Poston testified that she is a graduate of Guilford College and Janice Poston testified that she had completed two years of college. Neither is uneducated and both are obviously women of intelligence. Neither asked for a continuance. Neither offered any complaint that they had no counsel. They proceeded to offer evidence with respect to the value of the land and with respect to the transaction with Morgan-Schultheiss and the events leading up to it.

Under the circumstances of this case, we are of the opinion that the court was under no duty to have appellants' "counsel of record" present or see that he had properly withdrawn pur-

suant to Rule 16. In this situation, there was no "counsel of record" within the contemplation of the rule. We note that counsel for appellants limits this contention to the bank case. There is nothing in the record of the *Poston v. Morgan-Schultheiss* case to indicate that Evelyn Poston had counsel for any purpose at all until after the summary judgment was entered. She signed and filed her own complaint attaching to it the exhibits she indicated would be attached and signed and filed the notice of lis pendens. Indeed, lack of counsel has not been an issue with either appellant until now. We hold that the argument is without merit.

We turn now to the substantive feature of appellants' assignment of error. At oral argument, counsel for appellants conceded that he could not with any authority argue that the plaintiff is not entitled to judgment against Morgan-Schultheiss in the sum of $60,000 plus interest and costs nor that it is not entitled to foreclosure under the terms of the deed of trust. He does argue that a genuine issue of fact exists with respect to the ownership of the acreage contending that the question of the intention of the parties to the absolute deed accompanied by the collateral written agreement to reconvey upon payment of a specified sum of money within a specified time should be submitted to the jury. This contention is based upon these grounds: (1) If the grantor remains in possession of the land, the factual presumption is raised that a mortgage and not an absolute deed was intended. (2) Appellants at all times prior to the execution of the instruments indicated they wanted a loan. (3) Appellants introduced evidence that the land was worth $150,000 and the $60,000 consideration paid by Morgan-Schultheiss was clearly inadequate. (4) Evidence, undisputed, showed the grantor to be in financial distress. (5) Where the agreement to reconvey accompanying the deed is written rather than oral, no fraud, mistake, undue influence or ignorance need be shown; and where the execution of a deed in absolute form and a written agreement to convey raise doubt and ambiguity, the transaction is construed to be a mortgage.

In support of its motion, plaintiff filed a copy of the deed from Evelyn H. Poston to Morgan-Schultheiss, a copy of the $60,000 note from Morgan-Schultheiss to the bank and a copy of the deed of trust securing the note. It also filed a copy of

an agreement between Evelyn H. Poston and Morgan-Schul-theiss. That agreement is as follows:

"NORTH CAROLINA
GUILFORD COUNTY

THIS AGREEMENT entered into this 30th day of July, 1974, by and between EVELYN H. POSTON, hereafter referred to as SELLER, and MORGAN-SCHULTHEISS, INC., a North Carolina Corporation, hereafter referred to as BUYER.

WITNESSETH:

SELLER is the owner of her homeplace and approximately 25.8 acres on Vickery Chapel Road in Jamestown, North Carolina, and has this date delivered to BUYER a warranty deed for the same.

NOW, THEREFORE, for and in consideration of the sums to be paid and in further consideration of the mutual promises made each to the other, it is agreed:

(1) Upon the title to said lands being approved by BUYER'S attorney or by BUYER'S bank's attorney, BUYER shall secure a loan in the sum of $60,000.00 and give as security for the same a Deed of Trust on the land.

(2) All liens and encumbrances against said land, except for the Deed of Trust to Perpetual Savings & Loan Association, shall be paid and satisfied of record at time of closing.

(3) J. V. Morgan, Attorney, shall hold as Trustee, a sufficient amount of the purchase price to satisfy the Perpetual loan until such time as the same is satisfied of record. It is the intent of the parties to leave that Deed of Trust on record, with the payments thereon being made by SELLER'S husband under a Court Order until such time as it is necessary to pay and cancel the same of record in order to give BUYER a title to said lands, subject only to the Deed of Trust to High Point Bank and Trust Company.

(4) On or before the 1st day of February, 1975, BUYER hereby gives SELLER an option to repurchase

said land upon SELLER paying to BUYER the sum of $65,000.00 plus all interest and other charges paid by BUYER to the bank on the $60,000.00 loan and plus any necessary attorney fees and other charges paid by him in connection with this transaction. In this event, the Deed of Trust to High Point Bank and Trust Company shall be paid in full by BUYER and SELLER shall receive from J. V. Morgan, Trustee, any funds in his hands under Paragraph Three (3) above.

(5) During the period before February 1, 1975, SELLER shall retain possession of said land and the buildings thereon. In the event she does not repurchase said land, she shall remove all of her personal belongings located thereon and shall give full possession to BUYER on or before February 15, 1975. Any personal property not removed on or before February 15, 1975, shall belong to BUYER.

(6) During the period prior to February 1, 1975, SELLER shall have the right to exert her best efforts to sell said land. In the event she secures a purchaser for all or any part of said lands, for an amount sufficient to repurchase the same from BUYER, she shall give BUYER first refusal to buy the same at the price offered by the prospective purchaser.

WITNESS the hands and seals of the parties this 30th day of July, 1974.

/s/ Evelyn H. Poston (SEAL)
Evelyn H. Poston, Seller

MORGAN-SCHULTHEISS, INC., Buyer

By: /s/ Roy G. Morgan
President

ATTEST:
/s/ G. E. Schultheiss
Secretary"

In support of its motion for summary judgment in #76CVS2096, Morgan-Schultheiss filed an affidavit of Roy Morgan, President of the Corporation, and the deposition of J. V. Morgan, attorney, together with deposition exhibits, copies

of agreements executed by the Postons and one Bennett, copies of corrrespondents in the matter, copy of the deed, deed of trust and note, and lists of debts and worthless checks of the Postons.

Both motions were heard together. The deposition of J. V. Morgan detailed the transactions had by him as attorney for Mrs. Poston. She and her daughter went to see Mr. Morgan on 12 April 1974. During a conference of some two hours, Mrs. Poston advised Mr. Morgan that North Carolina National Bank in Greensboro was foreclosing on a mortgage on her land and homeplace in Jamestown, that High Point Bank and Trust held a mortgage on a portion of the land and was threatening foreclosure, and held three notes on which they were starting suit, that Wachovia Bank in Greensboro had a claim against her, that a motel in Greensboro had started suit against her for room rental, and that several other actions had been started against her to secure money judgments for failure to pay accounts. Although Mrs. Poston was not sure of the figures, it appeared that she owed at that time between $50,000 and $70,000. There were approximately 25 acres in Jamestown on which was situate, as Mr. Morgan discovered by personal examination, a large old dilapidated house and some outbuildings. Mrs. Poston wanted to secure a long term loan on the property. The discussion revealed that her income was insufficient to make the payments on the loans she already had. Mr. Morgan suggested that she try to sell off some of the vacant land. She said she might be interested but would prefer to save the entire tract. Since she indicated she was related to some of the personnel at High Point Bank and Trust Company, Mr. Morgan suggested that she try to work out a loan there. She did and was unsuccessful. It developed that she had rented a car and had failed to pay therefor and a warrant had been issued for her arrest in addition to several warrants outstanding against her daughter for worthless checks. Mrs. Poston told Mr. Morgan that some men in Greensboro had offered her $8,000 per acre for the land. He strongly recommended that she sell at least 10 acres, retain the homeplace, and pay her debts. At her request, he contacted the people she said had made the offer but was told that no $8,000 per acre offer had been made. Two of those called said they might be interested in all the land at a reasonable price and would call back. One person contacted was a real estate dealer who said he would like to list the property. He said he had never told Mrs. Poston it was worth

$8,000 per acre but it might be worth $4,000 per acre. He never, however, came up with any prospects. Mr. Morgan recontacted one of the persons who had indicated an interest and wanted Mrs. Poston to give him her best price. She would not authorize less than $8,000 per acre and would sell 10 acres. When Mr. Morgan reported this to Mr. Lewis, the prospect, he said he was not the least bit interested.

During these negotiations North Carolina National Bank went forward with its foreclosure and the high bid was just enough to pay that mortgage and a prior one. Mr. Morgan advanced Mrs. Poston sufficient funds with which to raise the bid and extend the time to find a purchaser for the land. Both Mrs. Poston and Mr. Morgan contacted several people but were not successful. The land was resold, and to secure more time, Mr. John Haworth, Trustee for High Point Bank and Trust Company, raised the bid at the last moment.

Mr. Morgan then received a call from Robert Hodgman, an attorney in Greensboro, who said his client, Mr. Bennett, would be interested in buying the entire tract. A conference was arranged between Bennett and Mrs. Poston. Her daughter was present, as were the attorneys for the parties. This was early May of 1974. Mr. Bennett made an offer, and Mrs. Poston asked if he would make her a loan. He said that under no circumstances could he do that. After a lengthy conference, Mrs. Poston agreed to sell if Mr. Bennett would give her an option to repurchase at the end of a year. After further phone calls and negotiations, Mr. Bennett agreed but for not more than six months. The necessary papers were prepared, including the agreement to allow her to repurchase. The purchase price was $30,000. Mr. Bennett was to pay the outstanding first mortgage to Perpetual Savings and Loan. She was to have the privilege of repurchasing at any time before 11 September 1974 by paying Mr. Bennett $31,000 plus any interest and other charges he might have paid on money borrowed to buy the land, attorney fees and other charges in connection with the transaction. She was to retain possession of the property and if she did not exercise the option, he was to pay her the amount due on the Perpetual Savings and Loan deed of trust. Should she find another purchaser, Mr. Bennett was to be given the opportunity

to buy at that price. Mrs. Poston signed the agreement and the deed and a letter to Mr. Morgan's firm as follows:

"This is to acknowledge that we employed you as our attorney on April 12, 1974, to represent us in connection with the sale of the land in Jamestown, foreclosures, suits and warrants outstanding and unpaid debts.

Obligations now due by us are set out on the attached Exhibit A which is made a part of this letter.

We hereby authorize you to do the following:

(1) Deliver the deed and close the transaction agreed upon with George Alton Bennett, III, a copy of said agreement being attached hereto as Exhibit B which is made a part of this letter.

(2) Receive from George Alton Bennett, III, the $30,000.00 payment and to disburse the same through your Trust Account as follows:

(a) Pay the amounts due per items 1 through 10 as shown on Exhibit A in the total amount of approximately $26,737.24.

(b) Pay to Evelyn H. Poston the balance in your hands after the above matters have been closed.

(3) To make a court appearance in the criminal cases listed and to dispose of those cases in your discretion.

(4) Assist us in securing a buyer or buyers for the subject real estate, subject to our approval of the sales price and the amount of land sold.

It is understood and agreed that the attorney fee paid to you shall cover your legal services in the past and for a period of 120 days from this date. At the end of that period, we release you from any further duties to us unless we see fit to employ your services in other matters after that date.

(5) Notify C. W. Poston that the Perpetual loan has been paid in full and that he is to thereafter make the payments to Evelyn H. Poston as set out in the Court Order.

(6) Receive from Robert S. Hodgman, 222 Commerce Street, Greensboro, North Carolina, his entire files pertaining to all matters he has represented us in. In consideration thereof, we fully and completely release Mr. Hodgman as our attorney and do release and forever discharge him from any and every right, claim or demand which we might have or might hereafter have against him on account of, connected with, or growing out of his representing us as our attorney. We authorize you to give him a signed copy of this letter. We understand that he will represent George Alton Bennett, III, in future transactions.

You have fully explained to us that High Point Bank and Trust Company is foreclosing the lot and suing us on their notes; that other claimants will probably secure judgments against us and that they will be liens on the real estate if we get title back into our name; that Internal Revenue Service claims may be liens against the land and/or against our income. You have further explained to us that the transaction with George Alton Bennett, III, is strictly a stop-gap measure to give us time to try to sell portions of our land and redeem it under our option to repurchase and that all of this must be done within the 120 day period; otherwise, we have sold the land for a total of $40,000.00.

Yours truly,
/s/ Evelyn H. Poston
    Evelyn H. Poston

/s/ Janice E. Poston
    Janice E. Poston"

This transaction was not consummated, because Mr. Bennett could not borrow the purchase price from his bank. Mr. Morgan so advised Mrs. Poston, and they continued to try to find a purchaser. She told Mr. Morgan that she placed an ad in a New York paper, advertising it as an ancestral homeplace.

Finally in July, Morgan-Schultheiss showed some interest in the property. Mr. Roy Morgan was interested because he had bought some land very near it but there was some acreage between his and the Poston property and he wanted to buy both pieces. Mrs. Poston was contacted, the figures were again totalled and, since judgments and other liens against the prop-

erty had by then been recorded, more money was needed. Morgan-Schultheiss agreed to pay $60,000. Mrs. Poston inquired whether it would give her an option to repurchase as Mr. Bennett had agreed to do. They were not interested, but after several conferences, agreed to give her a six months option to repurchase at $65,000 plus all interest and charges Morgan-Schultheiss had incurred. Again she was to retain possession, have the privilege of attempting to find another purchaser and give Morgan-Schultheiss the first refusal to buy at that price. She executed all the necessary papers including the same letter which had been written in connection with the Bennett transaction with only names and amounts changed. Morgan-Schultheiss borrowed $60,000 from High Point Bank and Trust Company, paid it to Mr. Morgan for Mrs. Poston, and he disbursed it to her creditors and lienholders, retaining $8,000 in trust to pay the Perpetual Savings and Loan in the event her former husband defaulted in his obligation to make monthly payments thereon. The transaction was consummated. Mr. Morgan paid from his trust account all the debts, worthless checks, costs, etc., listed on the attachment to Mrs. Poston's letter including attorneys fees of $4,000 (which fee included a fee for title search and certification of title to High Point Bank and Trust Company for Morgan-Schultheiss), and gave Mrs. Poston his firm's trust check #M6311, dated 7 August 1974, for $4,893.43 designated as "balance of proceeds of sale of land."

On 7 January 1975, Mr. Morgan wrote Mrs. Poston reminding her that her option to repurchase expired 1 February. Thereafter, Mr. Morgan received a call from Charles Dameron, a Greensboro lawyer, stating that Mrs. Poston had consulted him and inquired whether he could obtain an extension of time. Mr. Morgan contacted Morgan-Schultheiss and they finally agreed on an extension to 3 March 1975 upon a $200 consideration. The extension was prepared by Mr. Morgan, signed by Morgan-Schultheiss, and forwarded to Mr. Dameron. The extension also provided for a payment of $500 to Robert Hodgman, Mrs. Poston's "former attorney." She executed the agreement, and Mr. Dameron returned an executed copy to Mr. Morgan. In subsequent telephone conversations, Mr. Dameron advised Mr. Morgan that he was working with Mrs. Poston, wanted names of people Mr. Morgan had contacted and other information. Finally, by letter dated 21 February 1975, Mr. Dameron forwarded to Mr. Morgan a letter signed by Mrs. Poston au-

thorizing the payment of $500 fee to Mr. Dameron from the $8,000 held in trust by Mr. Morgan. On 3 March 1975 Mr. Kent Lively, a Greensboro attorney, called Mr. Morgan stating that Mrs. Poston had consulted him and asking for the facts of the situation. Mr. Morgan had no further contact or knowledge of the status of the matter. He did learn, when he was handed a copy of her complaint, that she was claiming the transaction was not a sale. Mr. Morgan was unaware that Mrs. Poston was in ill health during the spring, summer, and fall of 1974. She never told him she had high blood pressure and phlebitis. He did know she was worried. He revealed to her the name of the prospective purchaser the first time he talked to her about the Morgan-Schultheiss sale. She thought she could work out a sale of the land between them. Although she originally wanted a loan, she became reconciled to the impossibility of obtaining one. He never formed an opinion of the value of the land, but one realtor told him he would list it for $4,000 per acre. Another said it would be worth $3,000 per acre because it would not perk.

Both Mrs. Poston and her daughter were allowed to testify in open court. Both identified the papers executed by Mrs. Poston in connection with the Bennett transaction which was never consummated and the Morgan-Schultheiss transaction. Janice testified that her mother "never agreed to sell the whole thing." She further testified that Mr. Morgan would not disclose the name of the buyer but insisted that her mother sign the deed. She said that when they thought the Bennett deal was going through, she wrote some more checks which were worthless. They repeatedly told Mr. Morgan they wanted a loan and he told them they had a loan. She testified "one of the reasons I am taking the position that it was a loan and not a sale of the real estate is because my mother and I had been under some emotional stress and strain."

Mrs. Poston testified that on one occasion a minister from Greensboro had promised to buy a lot for $6500 and they wrote some checks on the strength of that, but when he went and looked at the property he wanted to buy it all, and she was not willing to sell all of it. She testified to several offers, none of which materialized, that after the Bennett deal fell through she advertised five or seven acres in the New York Times, that Mr. Morgan would not tell her the name of the prospective purchaser but the deal would be similar to the Bennett deal, that

she told him she wanted no part of that. She said when he called to tell her the papers were ready, she told him she wanted a loan. At his suggestion, she went to his office to discuss it. She was in a state of complete exhaustion and her eyes were blurred. Mr. Morgan told her the paper she signed was a loan. She further testified that they were prepared within 30 days to pay the entire loan, plus interest to the High Point Bank, that she was graduated from college but did not read the papers she signed, and they were not explained to her. Apparently, neither Mrs. Poston nor her daughter raise any question with respect to the amount of their debts which Mr. Morgan paid, but both testified to the fact that they were in financial distress.

In *O'Briant v. Lee,* 214 N.C. 723, 200 S.E. 865 (1939), perhaps the leading case in this State with respect to this problem, the Court, speaking through Barnhill, J. (later C.J.), said

". . . when it does not affirmatively appear on the face of the instruments that they were intended as security, and such fact cannot be fairly inferred therefrom, the actual intent of the parties at the time is the controlling criterion in determining the true nature and effect of the instruments; and that, in establishing this intent, the debtor has the right to prove by evidence *dehors* the instruments that the transaction was in fact between debtor and creditor for the security of a loan.

If there was a debt, either antecedent or presently created, the instrument must be construed to constitute a mortgage, unless a contrary intent clearly appears upon the face of the instruments. If this fact does not appear, then the continued possession of the property by the grantor; the inadequacy of the consideration; that the negotiations originated out of an application for a loan; the circumstances surrounding the transaction; and the conduct of the parties before, at, and after the time of the execution of the instruments are some of the circumstances to be considered.

But the contention is here made that there is no reciprocal obligation resting on the grantors to redeem; that it is entirely optional with them as to whether they shall exercise the right to repurchase within the time stipulated; that it does not appear upon the face of the papers that there is any personal obligation on the part of the grantors to

pay the amount of the alleged loan and interest. This is not essential. Evidence of the indebtedness is not required to be in writing. It may be proven by parol. Furthermore, such obligation would only enable the mortgagee to look to the mortgagor for any deficiency remaining after the application of the proceeds of sale of the premises to the payment of the sum secured. In the cases where the question has arisen whether the transaction was one of purchase or of security and the instruments disclosed a debt in the amount of the alleged purchase price and no other sum is paid it has been held that this fact determines conclusively the character of the transaction as a mortgage. (Citations omitted.)" *Id.* at 732-33, 200 S.E. at 871-72.

In *Ferguson v. Blanchard,* 220 N.C. 1, 16 S.E. 2d 414 (1941), the plaintiff alleged that a warranty deed and option to repurchase constituted a security transaction. There plaintiffs' intestate and his wife had given two deeds of trust to secure a $20,000 debt to defendant. They defaulted in payment and conveyed the land to defendant. As a part of the transaction, an agreement was entered into between them giving plaintiffs' intestates the right to repurchase for $22,500, the agreed amount of the debt and interest. They were given the right to sell the property on or before 19 June 1929 for $22,500 plus interest and taxes and if more than that was realized plaintiff should receive 90% of the excess, and also the right to sell the timber. The two deeds of trust were cancelled. In 1926 they sold a portion of the land for $28,740 and received $2,000 in cash and notes for the balance secured by a deed of trust on the portion sold. Defendant joined in the deed of conveyance and took the notes, although there was no allegation that payment was ever received on them. Defendant denied that the transaction constituted anything other than a sale with an option to repurchase. A receiver was appointed and found facts from which he concluded that the transaction constituted a sale and not a mortgage. In affirming, the Court said:

"It is true that when a debtor conveys land to a creditor by deed absolute in form and at the same time gives a note or otherwise obligates himself to pay the debt, and takes from the grantee an agreement to reconvey upon payment of the debt, the transaction is a mortgage. *Robinson v. Willoughby,* 65 N.C., 520. But if the agreement leaves it entirely optional with the debtor whether he will pay the

debt and redeem the land or not, and does not bind him to do so, or continue his obligation to pay, the relationship of mortgagor and mortgagee may not be held to continue unless the parties have so intended. The distinction is pointed out in *O'Briant v. Lee*, 212 N.C., 793, 195 S.E., 15, where *Connor, J.,* speaking for the Court, quotes with approval from 41 C.J., 325, as follows: 'If it is a debt which the grantor is bound to pay, which the grantee might collect by proper proceedings, and for which the deed to the land is to stand as security, the transaction is a mortgage; but if it is entirely optional with the grantor to pay the money and receive a reconveyance, he has not the rights of a mortgagor, but only the privilege of repurchasing the property.' And in Pomeroy's Equity Jurisprudence (sec. 1194) it is said: 'Where land is conveyed by an absolute deed, and an instrument is given back as a part of the same transation, not containing the condition ordinarily inserted in mortgages, but being an agreement that the grantee will reconvey the premises if the grantor shall pay a certain sum of money at or before a specified time, the two taken together may be what on their face they purport to be—a mere sale with a contract of repurchase, or they may constitute a mortgage.'

Whether any particular transaction amounts to a mortgage or an option of repurchase depends upon the real intention of the parties, as shown on the face of the writings, or by extrinsic evidence, and the distinction seems to be whether the debt existing prior to the conveyance is still left subsisting or has been entirely discharged or satisfied by the conveyance. If no relation whatsoever of debtor and creditor is left subsisting, the transaction is a sale with contract of repurchase, since there is no debt to be secured. Pomeroy's Equity Jurisprudence, sec. 1195." *Id.* at 7-8, 16 S.E. 2d at 418.

*See also Ricks v. Batchelor,* 225 N.C. 8, 33 S.E. 2d 68 (1945).

In *McKinley v. Hinnant,* 242 N.C. 245, 87 S.E. 2d 568 (1955), the Court referred to *O'Briant, Ferguson,* and *Ricks, supra,* for discussion of the applicable principles of law and noted that whether the transaction amounts to a mortgage or a sale with option to repurchase depends on the real intention of the parties, " . . . and the distinction is whether the debt

existing prior to the conveyance is still subsisting, or has been satisfied by the conveyance. If the relation of debtor and creditor still continues, equity will regard the transaction as a method of securing a debt—and hence a mortgage." *Id.* at 251, 87 S.E. 2d at 573. The Court further noted that if the value of the property conveyed is much greater than the consideration for the deed, this is a factor tending to show that the transaction was intended to be a mortgage.

*Hardy v. Neville*, 261 N.C. 454, 135 S.E. 2d 48 (1964), presents a fact situation strikingly similar to the case *sub judice*. Plaintiffs instituted an action to have the court declare that a deed and two agreements between the parties established a mortgagor-mortgagee relationship between them and to have the grantees required to accept payment of the amount due and cancel the deed. The land had been sold to defendant Lock, and defendants Neville by answer averred that the amount due the plaintiffs from the sale had been deposited for them in the office of the Clerk of Superior Court. Plaintiffs moved for judgment on the pleading, but the court did not rule on this motion. The parties agreed that the court might find the facts, apply the law, and render judgment. At the conclusion of the hearing, the court, without finding facts, nonsuited the plaintiffs and dismissed the action. Plaintiffs' motion for judgment on the pleadings was based on their contention that the allegations of the complaint and admission in defendants' answer conclusively showed that the transaction was in fact security for a debt and inequity a mortgage. Justice Higgins, writing for a unanimous Court, reviewed the averments in the answer. Prior to 1 January 1961, plaintiffs were heavily indebted and threatened with the foreclosure of two deeds of trust on their farm. They applied to defendants Neville for financial help. At that time, their indebtedness amounted to $8,736.70. The answer contained an itemization of their debts. After extensive discussion and negotiations, plaintiffs entered into an agreement with defendants Neville under which plaintiffs executed a deed to defendants Neville conveying certain real estate, and the plaintiffs and defendants Neville entered into a "contract in the nature of an option" by the terms of which defendants Neville agreed to reconvey the property to plaintiffs upon the payment by plaintiffs to them of $8,736.70 plus interest, with all taxes paid on the property paid by the Nevilles and all insurance premiums advanced by the Nevilles. Plaintiffs were not able to repurchase

during the time set, and a second option was given "extending the time for payment in order to give the plaintiffs additional opportunity to redeem the real estate referred to in this cause." This second contract was attached to and made a part of defendants' answer. It provided if plaintiffs were unable to repurchase by the time set, the farm would be sold (at public auction after advertisement for two weeks in a designated newspaper if the parties could not agree on a private sale) and the proceeds over and above $8,736.70 plus interest, taxes and insurance would be divided equally.

The Court noted some of the factors to be considered in determining whether the transaction constituted a sale or a mortgage: whether the relationship of debtor-creditor existed and continues to exist after the conveyance; whether the grantor is in distress at the time of the transaction; and whether the consideration for the conveyance was the value of the land or exactly the amount of the advancement by grantees. The Court said the defendants' answer made out " . . . a clear case of debtor-creditor relationship between the Hardys and the Nevilles. The Nevilles held the legal title as security for their debt. The Hardys owned the equity of redemption. Both together, but neither alone, could sell and convey a good title to the purchaser." *Id.* at 458, 135 S.E. 2d at 51. The Court held that the trial court erred in failing to allow plaintiffs' motion for judgment on the pleadings.

[3] When evidence and materials presented to the court on the motions for summary judgment are tested against the principles enunciated in the foregoing cases, we think the result must be that a genuine issue of material fact was presented. There can be no doubt but that Mrs. Poston was in financial distress. Nor is it controverted that she was desperately attempting to secure a loan. The deposition of Mr. Morgan details the various debts outstanding, and Mrs. Poston's evidence is not materially in conflict. Mr. Morgan's deposition revealed that the $4,000 fee paid by Mrs. Poston included the fee for title search and certification of title to the bank furnishing the $60,000 to Morgan-Schultheiss. The deposition of Mr. Morgan reveals that the lowest value of the property would be $77,400. Evidence for the Postons would indicate a value in excess of $150,000. A more serious conflict arises with respect to the intent of the parties. Mrs. Poston insists that she thought a loan was being arranged and that she never agreed to sell all

of her property. Further, she insists that not until after the transaction was concluded and at a later date did she learn that there could be some question about the true nature of the transaction. While it does seem apparent from the record before us that, in any event, nothing short of a miracle would be necessary for Mrs. Poston to raise the money to redeem the property, it is not the province of the trial court on a summary judgment motion nor this Court on appeal to pass on the credibility of the evidence. Suffice it to say that we are of the opinion that the materials presented at the hearing on the motions for summary judgment present a question which must be determined by a jury. Since the record does not separate the materials and evidence presented as to each case, we must assume that the court considered the same evidence and materials and documents on each motion, so that the result would be the same in each case, i.e., the motion for summary judgment in each case should have been denied. We are not unaware of the position taken by Morgan-Schultheiss that the oral evidence presented by the Postons was inadmissible and the court properly disregarded it. We think the comment made by Judge Parker in *Chandler v. Savings & Loan Assoc.*, 24 N.C. App. 455, 461, 211 S.E. 2d 484, 489 (1975), is appropriate:

> "In passing, we note that although Rule 43(e) of the Rules of Civil Procedure does permit the court to hear oral testimony in ruling upon a motion for summary judgment, '[t]his procedure should normally be utilized only if a small link of evidence is needed, and not for a long drawn out hearing to determine whether there is to be a trial.' 6 Moore's Federal Practice, 2d Ed., ¶ 56.02[9], p. 2042. In discussing the use of oral testimony at a hearing on a motion for summary judgment, the same treatise points out that receiving evidence at the hearing, as distinguished from considering supporting affidavits or depositions which are normally required to be filed before the hearing,
>
>> 'may not give the other party a fair opportunity to rebut; and this is particularly important in the case of the party opposing the motion for summary judgment.
>>
>> 'Also the summary judgment procedure is apt to be wasteful and burdensome if the summary judgment hearing is a protracted hearing, in effect a trial, to

determine that a trial must be held.' 6 Moore's Federal Practice, 2d Ed., ¶ 56.11[8], P. 2206."

While it would certainly have been much preferable had Mrs. Poston presented her evidence in affidavit form, we think the fact that she was not represented by counsel and obviously financially unable to obtain counsel is a circumstance to be considered and which was considered by the court in admitting her evidence.

[4]   With respect to the default judgments entered on the four counterclaims of Morgan-Schultheiss in # 76CVS2096 *(Poston v. Morgan-Schultheiss)*, plaintiff in that action, Mrs. Poston, contends that the default judgments were entered after the entire action, including the counterclaims, had been dismissed on defendant's motion for summary judgment. Therefore, argues Mrs. Poston, an appeal having been taken and not abandoned, the court acted without jurisdiction. We cannot agree. The complaint and notice of lis pendens in this action were filed 17 February 1976. Defendant filed its answer on 27 February 1976. The answer contained four counterclaims. On the same day, defendant filed its motion for summary judgment. The motion obviously related only to plaintiff's action, because under G.S. 1A-1, Rule 56(a), motion for summary judgment on the counterclaims could not have been validly filed until after the expiration of 30 days from the "commencement of the action" asserted by the counterclaims. We think it abundantly clear that the motion for summary judgment, filed the same day as answer setting up counterclaims, was directed only to plaintiff's principal action. Summary judgment may be entered upon less than the entire case. *See Properties, Inc. v. Ko-Ko Mart, Inc.,* 28 N.C. App. 532, 222 S.E. 2d 267, *cert. den.,* 289 N.C. 615, 223 S.E. 2d 392 (1976) ; *Rentals, Inc. v. Rentals, Inc.,* 26 N.C. App. 175, 215 S.E. 2d 398 (1975).; *Patrick v. Hurdle,* 16 N.C. App. 28, 190 S.E. 2d 871, *cert. den.,* 282 N.C. 304, 192 S.E. 2d 195 (1972). Plaintiff at all times pertinent to this portion of this litigation was represented by competent counsel. We are of the opinion, and so hold, that the court did have jurisdiction to enter the orders of default judgments on 24 May 1976 from which plaintiff appeals, and the orders with respect to the second, third, and fourth counterclaims are affirmed.

[5]   We reach a different conclusion with respect to the order on the first counterclaim, but for a different reason. The first

counterclaim is entitled "First Counterclaim to Quiet Title." It simply alleges that the transaction complained of was a sale by warranty deed of the lands described to defendant, that plaintiff claims an interest adverse to defendant, that plaintiff's claim is valid neither in law nor in fact, that plaintiff's claim is adverse to defendant and the notice of lis pendens constitutes a cloud on defendant's title, and asks that the cloud be removed and defendant declared the owner in fee of the property. This amounts to no more than a denial of the allegations in plaintiff's complaint. It is not in effect a counterclaim and requires no answer by plaintiff. Since plaintiff is not required to answer the First Counterclaim, entry of default judgment for failure to answer was in error and must be vacated.

Appellant also appeals from an order dated 30 August 1976, dismissing her appeal. All parties agree that the order was entered through mistake. Counsel for Morgan-Schultheiss, the movant, states that he was not served with nor provided with copies of the various motions and orders extending time for appellant, but that the original court file clearly reveals that proper orders were entered upon motions duly made. The order dismissing the appeal is vacated.

From the matters appealed from, we hold as follows:

In case No. 76CVS1402 *(Bank v. Morgan-Schultheiss, et al.)*, the portion of the summary judgment order giving the equity of redemption to Morgan-Schultheiss, Inc., is reversed. The portion giving Morgan-Schultheiss, Inc., the right to exercise its equity of redemption and concluding that no genuine issue of material fact existed is stricken.

In case No. 76CVS2096 *(Poston v. Morgan-Schultheiss, Inc.)*, the order granting defendant's motion for summary judgment is reversed. The default judgment as to the first counterclaim is vacated. The default judgments as to the second, third and fourth counterclaims are affirmed.

In case No. 76CVS2096, the order dismissing the appeal is vacated.

Both cases are remanded for further proceedings in accordance with this opinion.

Judges HEDRICK and ARNOLD concur.